ST. LOUIS SOUTHWESTERN RAILROAD COMPANY *v.* ALVERSON.

Opinion delivered April 20, 1925.

1. APPEAL AND ERROR—NECESSITY FOR MOTION FOR NEW TRIAL.—Where plaintiff filed no motion for new trial, her cross-appeal will not raise the question whether the court erred in directing a new trial on one of the counts of her complaint.

2. CARRIERS—PENALTY FOR EXCESSIVE CHARGE.—Where the first conductor on defendant's train on which plaintiff was a passenger failed to punch plaintiff's ticket and return it to her, and the second conductor required plaintiff to pay a second time, the defendant was responsible for the acts of both conductors, and plaintiff, being required to pay excess fare, was entitled to recover the statutory penalty provided by Crawford & Moses' Dig., § 887.

3. CARRIERS—PENALTY FOR EXCESSIVE CHARGE—DEFENSE.—Where defendant's conductor deliberately and intentionally charged excessive fare from a passenger, it is no defense to an action to

recover the statutory penalty that the conductor promised to return the money if the fare had been paid and did offer to return it after ascertaining that it had been paid.

Appeal from Lonoke Circuit Court; *George W. Clark,* Judge; affirmed.

*J. D. Turney, A. H. Kiskaddon* and *W.  T.  Wooldridge,* for appellant.

*E. H. Timmons,* for appellee.

SMITH, J.  On August 8, 1923, appellee, a young lady, and Howard Gentry, a young man, who is her cousin, bought tickets from the appellant railroad com-pany from North Little Rock to Geridge, a station on appellant's railroad, for which they each paid the sum of $1.44.  After purchasing the tickets they boarded the train and became passengers in a coach which went through from North Little Rock to Gillette, a station beyond Geridge.  This train passed through England en route to Geridge, and at England the car in which appel-lee was a passenger was attached to a train which ran from England to Gillette.  After the train left North Little Rock the conductor in charge of the train took up the tickets of appellee and her cousin, and placed a ticket check in the curtain of the window by which they were seated.  The conductor should have punched these tickets to show that they had been used to England, and should have returned them, as there was a change of conduc-tors at England.

The appellee did not leave the coach at England. The railroad company has a rule that no one is allowed to enter a train without exhibiting to some employee of the company a ticket entitling the holder to passage on the train.  An employee of the company performed this service for it at England.

After the train left England the new conductor, whose name was Williamson, went through the train collecting fares, and, when he came to appellee, he demanded her fare.  She explained that she had no ticket, as she had given it to the conductor in charge of

the train out of North Little Rock. Conductor William-son said it was strange that the first conductor had not returned the ticket, as he should have done. Appellee explained that she did not know this, and that she supposed the first conductor knew what he was doing, and she called the attention of Conductor Williamson to the ticket check in the window curtain which the first conductor had placed there. Notwithstanding this explanation, Conductor Williamson stated that appellee and her companion would each have to pay 58 cents—the fare from England to Geridge—or he would put them off the train. They told the conductor that they did not have that much money, but he said that made no difference, as he was not running an excursion train. A passenger sitting near appellee and her companion stated to the conductor that he had seen them buy tickets in North Little Rock, but the conductor told this passenger to keep his bill out of it.

The conductor told appellee and her companion they would have to get off, and gave a signal for the train to stop. The conductor opened the door of the coach and told appellee and her companion to come on out, and they got up and went to the door of the coach, and, as young Gentry was about to get off, appellee asked the conductor to put her baggage off at Geridge. The conductor asked her if she had a baggage check, and she told him she had, and she exhibited it to him. The conductor examined the baggage check, and, after doing so, told appellee and her companion to go back and sit down, that he would let them go on to Geridge, but that he would put the trunk off at Humnoke and hold it for the $1.16, the amount of the two fares to Geridge.

Appellee and young Gentry, her cousin, were on their way to visit Tom Alverson, a brother of appellee. Mr. Alverson boarded the train at Humnoke to meet his guests, and they explained what had happened to him, and he told the conductor he would pay the two fares the next morning on the return trip of the train, as

he did not have with him the amount of money required to pay the two fares. This was not satisfactory to the conductor, and the trunk was put off at Humnoke. The conductor testified that he did this because there was a station agent at Humnoke, who could collect the $1.16 when the trunk was called for, while there was no agent at Geridge who could make the collection.

Mr. Alverson met this train the next morning on its return trip, and paid Conductor Williamson the $1.16. Williamson stated to Alverson at the time that he had wired the first conductor to ascertain if a mistake had been made, and that, if a mistake had been made, he would refund the money. After paying these fares Alverson hired an automobile, for which he paid $1.75, and drove over to Humnoke for the trunk. In passing through Humnoke Conductor Williamson told the station agent at that place to release the trunk, and this was done, and Alverson carried it to his home.

As soon as Williamson saw the first conductor, he told him what had occurred, and the first conductor admitted that he had neglected to return the tickets to appellee and her companion. On his next trip through Geridge, Williamson looked around for Alverson, but he failed to see him. He did this on each successive trip through Geridge for several days. Williamson then told the railroad section foreman at Geridge what had happened, and requested the foreman to tell Alverson that the money would be returned to him. This message was delivered by the foreman, but Alverson stated that he had not made the mistake, and that he would not meet the train. About a week afterwards Williamson himself saw Alverson at Geridge and tendered him the $1.16. Alverson declined to accept the money, and stated to Williamson that the matter had been placed in the hands of his attorney.

Williamson testified that he had no intention of collecting any excess fare from appellee and her companion, and that he demanded the fare because they had no

tickets. He admitted that his attention was called to the conductor's train check in the window curtain, and that it may have had the letter "G" on it, but that the letter "G" did not necessarily stand for Geridge. He testified that, when he explained to Alverson what he proposed to do about the trunk, assent was given. This was denied by Alverson, who testified that he had no alternative, and could only do what the conductor required.

Appellee prayed for judgment for the statutory penalty for an overcharge by a carrier on account of the 58-cent overcharge of fare, and in a second count she prayed for the penalty on account of the $1.75 she was required to pay for delivery of the trunk to the destination to which it had been checked. Young Gentry also sued for the statutory penalty, and the cases were tried together. The jury returned a verdict for appellee on the first count of her complaint in the sum of $52.33, and, under the direction of the court, found against her on the second count of her complaint. In the case of Gentry there was a verdict and judgment for the sum of 58 cents.

The railroad company has appealed from the judgment in favor of appellee on the first count of her complaint, and she has prayed a cross-appeal on the second count.

This cross-appeal will be disposed of by saying that appellee filed no motion for a new trial. Gentry did not appeal. It remains therefore only to determine whether the judgment in appellee's favor on the first count of her complaint should be affirmed.

The railroad company made a tender to appellee of $2.33, this being the amount of the excess fare and the sum required to haul the trunk from Humnoke, and, in the instructions requested by the railroad company, the recovery would have been limited to that amount.

Under the instructions given by the court the question submitted to the jury was whether the conductor Williamson had acted as a reasonable, careful and pru-

dent person in deciding whether appellee had paid her fare and in demanding the additional fares.

This instruction was more favorable to the railroad company than the law requires. It is an undisputed, admitted fact that appellee had paid her fare, and it was only through the negligence of the first conductor that the question arose.

The doctrine of the case of *St. L. I. M. & S. R. Co.* v. *Frisby,* 95 Ark. 281, is controlling here. In that case there was a question whether the ticket agent or the train auditor had made a mistake which resulted in the auditor collecting from the passenger an additional fare. It was there said that the statute under which the suit was brought (§ 6620 Kirby's Digest, which is now § 887 C. & M. Digest), and which is the same section under which appellee brought the instant case, was intended "to compensate the party injured for his expenses in the prosecution, and to compel the payment of such a sum by the company violating the law as will effectually stop the practice."

It was there further said: "The language of the statute is 'shall charge, demand, take or receive from any person or persons any greater compensation,' etc., and is referable to the company itself, and not to its agents. Of course, a corporation can only act through agents; but where it is, in direct and explicit terms, forbidden to do a thing, the acts of all its agents who contributed to the thing done must be considered the acts of the corporation itself. The thing forbidden by the statute under consideration is charging or receiving fare in excess of the maximum rate provided by law. The tickets in question seem to have been of the kind merely naming the places between which they were good for passage, and, as such, were in the nature of receipts for the passage money. 1 Fetter on Carriers of Passengers, § 275; Moore on Carriers, p. 806.

"The undisputed evidence shows that the tickets were exchanged by mistake. The plaintiff's evidence

shows that the mistake was explained to the train auditor, and that she was entitled to have the mistake corrected.  When that is done, we have the case of a passenger presenting to the auditor a receipt for passage money of the amount the company was allowed by law to charge.  The auditor refused it, and demanded and received an additional sum in excess of the amount so tendered.  The ticket seller and the auditor were each entitled to receive money for passage, and their acts must be deemed to be those of a single agent; and, when so treated, it is evident that a greater fare than that allowed by law was demanded and received by the railroad company.''

So here the first conductor, as well as the second, was entitled to collect fares, and the first conductor took from appellee the ticket which was intended to evidence the payment of the fare to appellee's destination. Each conductor acted for the railroad company, which was as much responsible for the acts of one of the conductors as it was for the other, and the joint action of the two conductors resulted in appellee being required to pay excess fare.  She was, of course, a party aggrieved within the meaning of the statute.  *St. L. I. M. & S. R. Co.* v. *Frisby, supra; St. L. I. M. & S. R. Co.* v. *Freeman,* 95 Ark. 218.

It is insisted, however, that the undisputed testimony shows that there was in fact no intention of exacting an excess of fare; that, when Conductor Williamson collected the $1.16, he announced that he would return the money if he found that the fare had been paid, and that he did offer to do so within a reasonable time after ascertaining that a mistake had been made.

We have held that a railroad company is liable for the penalty prescribed by the statute only when its agent intentionally charged a passenger an excessive fare, and that if the excess was collected as a mere inadvertance, the penalty could not be imposed.  *St. L. I. M. & S. R. Co.* v. *Baker,* 118 Ark. 69, and cases there cited.

Here, however, there was no such inadvertence as existed in the case cited. The excess was collected by Conductor Williamson, and was done deliberately, under circumstances which, according to the verdict of the jury, under the instructions given, would have satisfied a reasonable man that appellee had paid her fare.

It is true Conductor Williamson said he would return the fare if he found a mistake had been made, and that he later offered to do so; but this did not justify the collection of the excess fare. If a railroad company could defeat an action of this kind by saying that it would rectify any mistake it might make after ascertaining that a mistake had been made, passengers would be deprived of much of the protection which the statute was intended to afford.

Here there was a young lady, referred to by some of the witnesses as a girl inexperienced in traveling, who surrendered her ticket to the agent of the railroad company who had the right to demand it. She did not ask its return, because she did not know that she would have further use for it. Like many other passengers might be, she was not fortified with funds to meet any illegal exactions, and, but for the fortuitous circumstance that she had a check evidencing her right to the possession of a trunk which was being transported on the train, and which the conductor regarded as sufficient collateral for the $1.16 railroad fare, she would have been subjected to the inconvenience, discomfort and humiliation of being put off the train, and this trunk, which was put off the train before it reached its destination, was not surrendered until the excess fare was paid.

The act of the first conductor in failing to return to appellee her ticket was, no doubt, an act of carelessness, but the railroad company was responsible for that act, as it was done by the conductor in the discharge of his duties as such, and it proximately resulted in the second conductor demanding and deliberately receiving

58 cents in payment of a fare which had already been
fully paid.

Under the circumstances of the case no error would
have been committed had the jury been directed to return
a verdict in appellee's favor for the penalty. The ver-
dict of the jury was for the minimum amount of the
penalty prescribed by the statute, and, as no error
appears, the judgment is affirmed.