MOODY *v.* LOGAN.

4-9416                                     233 S. W. 2d 548

Opinion delivered November 6, 1950.

*Hout & Thaxton, Jack Holt* and *Ben B. Williamson,* for appellant.

*D. Leonard Lingo, Harry Ponder* and *Cunningham & Cunningham,* for appellee.

ED. F. McFADDIN, Justice. This is an election contest involving the Democratic nomination for County Judge of Lawrence County. Appellant and appellee were the only two candidates for said nomination in the August 8, 1950, Primary Election; and, on the face of the returns, appellee received 2,270 votes and appellant received 2,265 votes.

The Democratic County Central Committee, refusing a recount, certified appellee as the nominee; and this action was filed by appellant on August 15, 1950, claiming 224 illegal votes had been counted for appellee.[1] On August 19 appellee filed a pleading which was a motion to dismiss and also an answer and cross-complaint. Among other matters, the motion sought to dismiss the complaint on the claim that the printed list of poll tax payers had not been legally printed in exact compliance with § 3-118, Ark. Stats. The Circuit Court judgment was based on that point, and resulted in the dismissal of the appellant's complaint. We therefore discuss the evidence on this one point and the holding thereon.

[1] The complaint gave the number of each such claimed illegal ballot, the name of the person voting, and the box and precinct in which such vote was cast and counted. Two hundred and twenty-four votes were claimed illegal for reasons as follows: 121 voters had no poll tax receipt; 28 absentee ballots were so irregular as to be void; 21 voters were "moved in"; 40 persons voted in the wrong precinct; 2 illiterates had been mis-voted; 7 ballots of maiden voters were so irregular as to be void; and 5 persons had "voted" without going to the polls,

The applicable Statute (§ 3-118, Ark. Stats.) requires that these five things be done:

(1)—Not later than October 15 each year the Collector shall deliver to the County Clerk a list—duly arranged—of all persons who had paid poll tax on or before October 1 of that year, with said list duly authenticated by affidavit of the Collector.

(2)—The County Clerk shall at once record this list of poll tax payers in a well bound book.

(3)—The County Clerk, not later than October 22, shall deliver to the County Election Commissioners a certified copy of the list furnished him by the Collector.

(4)—The County Clerk shall, at all times, keep in his office, for public inspection, the original list of poll tax payers, as furnished him by the Collector.

(5)—The County Election Commissioners shall have the list of poll tax payers (furnished by the Clerk under (3) above) printed so that sufficient copies will be available to furnish one to each Judge at each General or Special Election.

In the case at bar, requirements (1) and (2) were strictly complied with[2]; but requirements (3), (4), and (5) were complied with only as follows:

(a) instead of making a certified copy of the list furnished by the Collector and delivering such copy to the Election Commissioners, the County Clerk—as had been the custom in that County for many years—delivered to the Election Commissioners the *original list* furnished by the Collector to the County Clerk; and thus the *original list* was not kept at all times by the County Clerk for public inspection; and

(b) when the Election Commissioners received the *original list* of poll tax payers from the Clerk, the list was in a ledger, with pages securely fastened; in order to facilitate the work of the printer, the pages were carefully cut from the ledger; and after the printed list (re-

---

[2] The list, as delivered to the Election Commissioners, actually contained the Clerk's certificate that the list had been recorded.

quirement (5) of § 3-118, Ark. Stats.) had been prepared, the unfastened pages were returned to the Clerk but still contained in the same ledger cover.

The Circuit Court held that these aforementioned items (a) and (b) were not in substantial compliance with the requirements of the Statute and that the printed list of poll tax payers, offered in evidence, had no verity.[3] Thus, the only question for decision on this appeal is whether, under the facts here presented, the printed list of voters was in substantial compliance with § 3-118, Ark. Stats., so as to be entitled to use in a contest after an election had been conducted.

We have held that prior to the election the provisions of § 3-118 are mandatory but after the election the requirements are directory, and that substantial compliance with the Statute will allow the printed list to be used in an election contest. In *Trussell* v. *Fish*, 202 Ark. 956, 154 S. W. 2d 587, we were considering a printed list from which the Collector's affidavit was entirely omitted. After reviewing our earlier cases, we said:

"In most of the cases where effect of the collector's failure to make the affidavit is discussed (see third footnote) it is said that there must be *substantial* compliance with the statute, and to this rule we adhere. The question is, What *is* substantial compliance? and it follows that proof in a particular case regarding intent and effect must first be considered before an answer can be formulated.

"There would be a subversion of purpose and a sacrifice of popular will if we should say that in a primary election the unintentional failure of a ministerial officer to perform strictly all functions which are made mandatory with respect to verification of poll tax lists, continues to be imperative after the lists, unaffected by

---

[3] In order to make a *prima facie* case as a basis for appeal, it was incumbent on the contestant (appellant here) to show that at least six votes (a number in this case sufficient to overcome appellee's majority) had been illegally cast. To make such *prima facie* case, the appellant offered to prove that 110 persons who voted for appellee in the election did not have poll tax receipts, as shown by the printed list. The Circuit Court held such proof insufficient, since the proof was based on the *printed* list which the Court held to be without verity.

fraud, and substantially correct in all other essentials, have performed the service intended by the legislative authority.''

In the case at bar the Election Commissioners returned to the County Clerk the ledger which contained the original list of poll tax payers prepared by the Collector; and with that original list before him, the County Clerk answered questions as follows:

''Q. You have referred to the original list that was given to you by the collector?

''A. Yes, sir, and this is it. (indicating)

''Q. Am I right; I find here a binding to a book, all the pages in the binding are loose; is that right?

''A. Yes, sir, the printers did that so they could print it.

''Q. These loose pages and this binding we have here, you have referred to, you say that amounts to the original list given you by the collector?

''A. That is right.

''Q. The original list was taken by you and turned over to the printer in Walnut Ridge?

''A. To Mr. Bland, he is a printer and an election commissioner.

''Q. Were these pages, that are cut out, cut out by the printer?

''A. He said he did.

''Q. Do you know yourself who cut them out, did you see him?

''A. No.

''Q. They were cut out when you got the book back?

''A. Yes, sir.

''Q. How long was the original list out of your hands, and out of the county clerk's office?

"A. I don't know, long enough for him to print it, I guess."

Of course the County Clerk should have literally followed § 3-118, Ark. Stats., and the previous custom in that County is no justification for such failure; but we cannot hold that—after an election—the integrity of the printed list had been destroyed because the County Clerk delivered the original list to the Election Commissioners, and the printed list was prepared from the original list, and the original list was returned to the County Clerk. It is argued that when the 250 pages were separated, one from the other, in order for the printer to set the type for the printed list, that such act constituted a fatal mutilation of the original list of poll tax payers. This original list is before us, just as it was introduced in evidence; each page is numbered; the handwriting is clear and legible; voters are arranged by Townships—all as required by Statute. As a matter of fact, a better prepared and more legible list of poll tax payers is seldom to be found. Mrs. Morgan, the Collector, testified that she prepared and delivered the list to the County Clerk, as required by law; and that it contained her certificate. She admitted that possibly one or two persons had paid poll tax whose names she did not find on her list; and stated that until she had time to check the list line by line, she could not definitely swear that there had been no change in it; but she said that the list returned by the printer to the Clerk, and offered in evidence, looked like the original list that she had turned over to the Clerk; and that she did not see anything in the list different from what it contained when she delivered it to the County Clerk.

We have detailed all the evidence concerning the mutilation of the original list in order to show that there is no conflict in the evidence, and no suggestion of fraud. It is merely a question of drawing the legal conclusion from admitted facts; and we conclude that there was a substantial compliance with § 3-118 of Ark. Stats. so that the integrity of the printed list, in this case, had not been destroyed; and that the printed list could be used in a

contest after an election had been held. Such being true, it necessarily follows that the judgment of the Circuit Court is reversed and the cause is remanded.

HOLT, J., not participating.