LOGAN *v.* MOODY.

4-9628                                    244 S. W. 2d 499

Opinion delivered December 10, 1951.

Rehearing denied January 14, 1952

698

*Ponder & Lingo, Cunningham & Cunningham* and *S. M. Bone,* for appellant.

*Hout & Thaxton* and *Ben B. Williamson,* for appellee.

ED. F. McFADDIN, Justice. This is the second appeal in this case, which is a contest over the Democratic nomination for County Judge of Lawrence County. For the opinion on the first appeal, see *Moody* v. *Logan,* 217 Ark. 859, 233 S. W. 2d 548. Upon the remand of the cause there was a second trial, which resulted in a finding and judgment that Moody received a majority of 21 votes. Logan now appeals, and Moody has cross-appealed. Presented, *inter alia,* are the assignments herein discussed.

I. *Appellant's Effort to Introduce Testimony After the Case Had Been Closed.* On the second trial the Circuit Judge conducted a most thorough trial. The contestant was permitted to add other names to his list of challenges. The contestee filed a cross-complaint, alleging irregularities and listing challenged votes. Then both sides were fully informed as to the trial Court's rules of procedure. With hundreds of votes challenged on each side and with more than two hundred witnesses actually testifying, the trial was naturally quite extended. It commenced on January 15, 1951; frequent recesses were taken for the convenience of the litigants and attorneys; and the trial was not concluded until February 22, 1951.

Even with such extended hearings, the appellant now insists that he should have been allowed to offer some further rebuttal testimony. But a study of the 800-page transcript and the scores of exhibits, convinces us that each side had ample time to develop the case. At all events, we cannot say that the trial Court abused sound judicial discretion in finally bringing the hearing to a conclusion.

II. *Absentee Ballots*. Several hundred persons voted absentee ballots; and Moody moved the Court to exclude all of these ballots. The motion was not granted entirely, but was granted as to 147 of the absentee ballots; and this ruling of the Court, in excluding the ballots, presents a most serious question. Act 325 of 1949 prescribes the procedure in absentee voting. In the case at bar the application form, as prescribed by the statute, was used by persons desiring absentee ballots; and such ballots were returned and counted. But the County Clerk failed to mark, on 147 of such applications, the date each was received by the Clerk; and because of such failure the Circuit Court refused to count any of the 147 ballots so cast. In ruling on this point, the Circuit Judge stated:

"These applications are a part of the record and are exhibits in the case. There is no filing mark on any of these 147 applications; and there is no way whatsoever to show when the applications were executed and returned to the county clerk. This might not seem to be important if it were not for the fact that paragraph 'C' of Section 1 of Act 325 placed a time limit on the delivery of said applications to the county clerk. It says the application must be delivered to the office of the county clerk not later than 1:30 p. m. on the day of the election; and the provision is made that if it is mailed in it must be in the office of the county clerk at least one day before the election. Certainly time is of the essence of this section. The Court believes it to be the law that when a certain thing is required to be done within a given time, that time becomes of the essence of the transaction. It is obvious from the reading of this section of Act 325 that the intention of the Legislature was to fix an absolute

time limit upon a voter making application for absentee ballots. It is incumbent upon the county clerk; in fact, it is made his duty under this law to file these applications and to keep an accurate record of the filing of the applications showing both the time of day that it was filed as well as the day of the month. Of course, it might be argued that this is not any omission on the part of the voter casting his ballot; but certainly we must know what time these applications were filed, because without this knowledge there would be no way of determining whether or not the Act had been complied with. If this provision of Act 325 means anything, it means that they must be filed within the time prescribed by law. The Court cannot assume that these applications were filed by 1:30 on the day of the election for those people who voted in person; neither can the Court assume that those that were sent in by mail were filed within the time required by law. It is impossible to ascertain when any of these 147 applications in question were filed. It is impossible to determine whether any of them were filed either in person by 1:30 on the day of the election, or one day before the election in cases of those that were mailed in. The Court believes that if there is not some way to fix the time of filing applications, that absentee voting would be thrown open to a great number of irregularities and fraud which Act 325 seeks to prevent. . . . For the reasons set out, the Court believes that the ballots cast which were procured through these 147 applications should be thrown out and disregarded and the vote established in other ways as provided by law."[1]

Act 325 of 1949 has not been before this court in any previous case, and the trial Court was therefore without any holding to serve as a guide in construing the Act. But a careful study convinces us that the trial Court erred in the ruling here involved. The only defect here

[1] After the court's ruling as above quoted Logan's attorney had the record show the following: "If permitted to do so, Frank Andrews, who was the duly qualified and acting county clerk of Lawrence County, Arkansas, during the year 1950, is present and would testify that he accepted the applications, which have been filed here, for the absentee voters, in his office, by himself and his deputy, Gertrude Bush; that none of these applications were received more than 15 days

claimed, in the entire procedure of obtaining and return-
ing the absentee ballot, was the failure of the Clerk to
place on the application for the ballot the date such appli-
cation was received in the Clerk's office. It is true that
such date should have been placed on the application in
order that it would affirmatively appear that Act 325 had
been obeyed.

But, should the failure of the Clerk to perform his
duty in this one particular result in the disfranchisement
of the voter? In *Henderson* v. *Gladish,* 198 Ark. 217,
128 S. W. 2d 257, in upholding the validity of a poll tax
receipt issued by an officer who did not comply with the
then existing requirement that the receipt be written in
ink, we said:

"To hold that one who had complied with the law
by regular payment of the tax, but who becomes the vic-
tim of a careless, a designing, or an uninformed collector
or deputy, would have the effect of completely disregard-
ing the primary qualification of an elector, which, as has
been shown, is the *actual timely payment of the tax.*"

In *Blackard* v. *Kolb,* 212 Ark. 332, 205 S. W. 2d 857,
the Sheriff had failed to stamp on the back of the poll tax
receipt certain language required by the statute there
involved. Even so we held the poll tax receipt to be valid
saying: ". . . such omission by the officer could not
defeat the elector's right of suffrage." The underlying
reasoning of these cases is applicable here. After the
election, the voter, if otherwise qualified, should not be
disfranchised merely because of the failure of the County
Clerk to have placed on the application for absentee bal-
lot the date such application was filed in his office. This
one omission of the County Clerk, in the absence of any

before August 8, 1950, and none of them later than 1:30 p. m. on
August 8, 1950; that he accepted the applications and listed them as
required by Act 325 of 1949; and that none of these by mail were
accepted later than 1:30 p. m. on the date prior to the date of the
primary; that he made a list and kept all the applications so left with
him; that he would further state that some were stamped filed and
others were not marked filed simply by oversight. That would be the
testimony of Mr. Frank Andrews if permitted to testify." The fore-
going was a portion of the rebuttal testimony which was excluded by
the court as referred to in Topic I, *supra.* We mention this excluded
testimony for information purposes only.

other claim seeking to invalidate the ballot, is not sufficient to disfranchise the voter.

So we reverse the ruling of the Circuit Court on this matter of the 147 absentee ballots. In one place in the record it appears that 147 ballots were involved; in another place the figure 144 is used. Elsewhere in the record it appears that some of the 147 voters were challenged on other grounds in addition to the one here discussed. In some instances, the other grounds of challenge were not developed because of the ruling excluding the absentee ballots. So this angle of the case—that is regarding each of the 147 absentee ballots held illegal because of the application irregularities just discussed— is remanded to the Circuit Court to give each party an opportunity to prove any other heretofore alleged invalidity on any of the 147 ballots. The Circuit Court will then tabulate the result as may be affected by the proof so developed.

III. *Ruling on Other Voters Who Used Absentee Ballots.* We affirm the ruling of the trial court in excluding the ballots of W. R. Cunningham, Frieda Cunningham, Mrs. R. B. Warner, Frank Zalaker and Charles Ratliff. The trial court held as a fact that none of these persons made application for absentee ballot prior to voting. The determination of this factual question is affirmed under the authority of *Williams* v. *Buchanan,* 86 Ark. 259, 110 S. W. 1024, and the other cases[2] which hold that in an election contest the findings of fact of the Circuit Court on conflicting evidence are as conclusive as a jury verdict. The trial Court found, as a fact, that none of these persons complied with the provisions of Act 325 of 1949.

IV. *Maiden Voters and Voters Who Paid Poll Tax in Another County.* The ballots of four maiden voters[3] should have been excluded because no affidavit was attached to each ballot showing such voter to be a maiden voter. By the same token, the Court was in error in

[2] These cases are collected in West's Arkansas Digest "Elections," key number 305.

[3] These were Bill Crabtree, Mrs. Rhea Starr, Dwight Creech and Mrs. Fred Dobbs.

holding as legal the ballots of 13 voters,[4] each of whom had paid a poll tax in some other county, and then moved to Lawrence County and resided there for at least six months prior to the election. Obviously, the name of none of these 13 voters was on the official list of voters of Lawrence County. Yet each was permitted to vote without filing with the election judges the original or certified copy of the poll tax receipt of such voter. In the main the procedure was that when each such voter appeared at the polls the election judges, being personally acquainted with the voter's qualifications, allowed such person to vote without requiring compliance with the law.

Section 3-227, Ark. Stats., comes to us from Initiated Act No. 1 of 1916 known as the Brundidge Primary Law. This section says in part:

"In any contest arising upon any election held under this Act, it shall be a ground of rejection of any ballot cast by an elector, whose name (a) does not appear upon the certified list of poll tax payers; or (b) who has not filed with the judges of election his original or certified copy of poll tax receipt, or written affidavit of the attainment of his majority; or (c) if such original or certified copy of such poll tax receipt or written affidavit has not been returned by the judges of election; or (d) the name of such person listed separately and certified as required by this Act."

This same quoted provision was a part of § 3777, C. & M. Digest, and was before this court in the case of *Taaffe v. Sanderson,* 173 Ark. 970, 294 S. W. 74, which case has become a landmark in election contest matters. Mr. Justice McHANEY, speaking for the court in that case, said:

"It is next contended that the court erred in holding five voters from other counties not qualified because they failed to file with the judges of election their poll tax

---

[4] They were Boyd Holloway, Mrs. M. J. Hill, J. C. Dawson, Tom Hutson, John Jones, Frank Weslouski, I. E. Sneed, Mrs. I. E. Sneed, Joe Robinson, Mrs. Clifford Rorex, Nolen Caldwell, Charles Post and Marvin Jean.

receipts, or certified copies thereof, or that the judges of election failed to return such evidence of qualification with the ballots. It was agreed that these persons had all the qualifications of electors in the counties from which they moved, and in Little River County, and in the precinct where they resided. But, having paid their poll tax in other counties, they did not appear on the official printed list of taxpayers, and it therefore became necessary for them to follow the provisions of the statute in order to be entitled to vote. Section 3777, C. & M. Digest. Since the same rules of law would apply to such voters as would to persons who had become twenty-one years of age since the last assessing time at which they could have assessed and been on the list, after twenty-one, raised by appellants' assignment No. 9, we will discuss the two together. Twenty-one votes for Taaffe and 17 for Collins were thrown out by the court, of persons voting who had become twenty-one years of age within such time. We hold that there was no error in so doing, as the exact question is decided adversely to appellants' contention in *McLain* v. *Fish,* 159 Ark. 199, 251 S. W. 686; *Craig* v. *Sims,* 160 Ark. 267, 255 S. W. 1; *Storey* v. *Looney,* 165 Ark. 455, 265 S. W. 51; *Wilson* v. *Danley,* 165 Ark. 565, 265 S. W. 358; and in the three CarlLee cases.''

Appellee says that certain language in the case of *Wilson* v. *Luck,* 203 Ark. 377, 156 S. W. 2d 795, in effect overruled the quoted language from *Taaffe* v. *Sanderson.* The language from *Wilson* v. *Luck* so relied upon by the appellee, is:

''We know, as a practical matter, that very few electors actually exhibit their poll tax receipts when they vote. When the elector is otherwise qualified, and has paid his poll tax, he has the right to presume that his name appears on the published list, and if his right to vote is not questioned he will not be required to attach his poll tax receipt to his ballot. If his right to vote is questioned, and it may be if his name does not appear on the printed list, then he must comply with the statute and furnish the evidence of his right to vote required by law.'' But a study of *Wilson* v. *Luck* shows that such quoted

language has no application to maiden voters or to voters who paid poll tax in other counties. In *Wilson* v. *Luck* the court was dealing with a situation where a voter, all the time a resident of Hempstead County, had paid his poll tax in that county, but his name did not appear on the official list. The court said that in such instances the voter "had the right to presume that his name appears on the published list, and if his right to vote is not questioned he will not be required to attach his poll tax receipt to his ballot." Nothing in *Wilson* v. *Luck* changed the holding of *Taaffe* v. *Sanderson* as quoted herein.

Under the authority of *Taaffe* v. *Sanderson*, and the cases cited therein, we hold that the trial court erred in including as valid the ballots of 13 voters, each of whom had paid a poll tax in some other county and who did not comply with the previously quoted provisions of § 3-227, Ark. Stats., by attaching to his ballot the original or certified copy of his poll tax receipt from such other county. Without meticulously checking all the transcript, we are not positive for which of the parties each of the 13 voters cast his ballot; but, since the cause is remanded on other points, then the trial court will exclude these 13 ballots in recasting the results.

V. *Other Rulings Challenged by Appellant.* (a) Appellant challenges the ballots of 7[5] voters held good by the Court. In each instance the challenged voter had a Lawrence County poll tax receipt and the Court found from the evidence that the voter was a resident of Lawrence County although temporarily working or visiting in another county, or in a township other than the one of his residence. In each instance a fact situation was presented as to the intention of the voter to maintain the home and voting place he claimed. We cannot say that the Court was in error on the factual findings regarding such voters, so the ruling is affirmed on each of the 7.

[5] These seven are W. A. Guthrie, Mrs. W. A. Guthrie, Oscar Haney, E. I. Sneed, Mrs. E. I. Sneed, J. C. Padgett, Staton Shockley.

(b) The ruling of the Court, holding certain other votes[6] to be legal, is challenged by appellant for various reasons. To give the details about each challenged vote would unduly prolong this opinion. The Court's ruling on each of these votes involved a factual finding on conflicting evidence. From the record we cannot say that there was no substantial evidence to sustain the Court's ruling, so we affirm as to each of such votes under the holding of *Williams* v. *Buchanan, supra.*

VI. *Boas Township.* Section 3-801, Ark. Stats., comes to us from § 6 of Act 30 of 1891. Under the authority of that Act the Lawrence County Board of Election Commissioners by order of July 10, 1926, duly divided Boas Township in Lawrence County into two distinct and separate voting *precincts,* to be known respectively as "Boas-North" and "Boas-South." The division order contained a definite designation of boundaries and of voting places, and was duly filed with the Clerk of the County Court and recorded as required by law. Thus, since 1926 two separate and distinct precincts have existed being "Boas-North" and "Boas-South." Notwithstanding this fact, some of the voters in Boas-North voted in Boas-South, and *vice versa.*

Ballots of twenty-five voters, challenged by the appellant as having voted in the wrong precinct, were held good by the Circuit Court. This holding was on the theory that over a long period of time the voters had considered the two voting precincts to be in effect but one precinct containing two voting boxes, merely for the convenience of the voters. In effect the Court held that custom and usage were sufficient to override the clear wording of the said order of 1926 which established two distinct precincts. In appellee's brief it is claimed that under the authority of § 3-232, Ark. Stats., the Democratic County Central Committee had power to set up additional boxes in a precinct, and that the two precincts

[6] Some of those casting votes were Mrs. J. N. Parks, Alfred Waggoner, Kenneth Guthrie, Joe Robinson, E. E. Wheat, Sloan Rainwater, Jr., William Rainwater, Mr. T. W. Bennett, Mrs. T. W. Bennett, and Dutch Green.

here involved might easily be considered as being two boxes in one precinct.

Notwithstanding all such argument, the fact remains that the County Election Commissioners of Lawrence County, by order of July 10, 1926, established two distinct and separate precincts and these precincts continue because the order is not shown to have been changed. Continued violation of the order does not change it. In *Wilson* v. *Luck*, 203 Ark. 377, 156 S. W. 2d 795, there was presented the question of voters voting in the wrong township, and Mr. Justice FRANK G. SMITH, after referring to Art. 3, § 1 of the Constitution, said:

"This requirement, as to residence, is, of course, mandatory, and requires the elector to vote in the precinct or ward in which he had resided for one month next preceding the election, and not elsewhere. No consideration of the convenience of the elector or any practice in which he may have been permitted to indulge can abrogate and render nugatory this mandatory provision of the Constitution."

The quoted language is clearly in point, and requires a holding that no voter in Boas-North could vote in Boas-South, or *vice-versa*. Therefore the ruling of the trial Court on this point is reversed; and on remand the Court will allow either side to introduce evidence on any voters heretofore challenged in either of these two precincts for voting in the wrong precinct. The Circuit Court will then tabulate the result after making the findings from the evidence presented.

VII. *Appellee's Cross-Complaint.* The trial Court made several rulings with which the appellee did not agree, but no motion for new trial was filed by appellee in the trial court. After the appellant had filed his appeal in this court, the appellee prayed a cross-appeal, which was granted under authority of § 27-2137, Ark. Stats.; and appellee now urges certain matters in such cross-appeal. One point relates to the conduct of the judges and clerks in counting the absentee ballots; another relates to the conduct of one of the judges in Ward 3 of

Campbell Township; another relates to the ruling of the Court on certain challenged votes; and the final points relate to the rulings of the Court in regard to filing of pleadings during the course of the trial. We hold against appellee on his cross-appeal. Some of the Justices making this opinion hold that the points in the cross-appeal cannot be considered because appellee failed to file a Motion for New Trial in the Circuit Court. Such Justices reason: (a) that none of appellee's assignments relates to matters that appear on the face of the record; and (b) that in a law case, as here, unless an appellee files a motion for new trial in the lower court, then his cross-appeal presents for consideration only those matters that appear on the face of the record. *St. L. S. W. Rd. Co.* v. *Alverson*, 168 Ark. 662, 271 S. W. 27; *Stacy* v. *Edwards*, 178 Ark. 911, 12 S. W. 2d 901; *Equitable L. A. Soc.* v. *Barton*, 192 Ark. 984, 96 S. W. 2d 480; *Aetna L. I. Co.* v. *Martin*, 192 Ark. 860, 96 S. W. 2d 327, and *School Dist.* v. *School Dist.*, 214 Ark. 514, 216 S. W. 2d 882. Other Justices making this opinion have studied the assignments in appellee's cross-appeal and find them to be without merit. The result of such composite views is, that the court holds against appellee on all matters urged in his cross-appeal.

*Conclusion.* Because of the ruling of the Court on the application for absentee ballots, as discussed in Topic II, *supra;* because of the ruling of the Court on voters moving into Lawrence County, who paid poll tax in other counties as discussed in Topic IV, *supra;* and because of the ruling of the Court on the Boas voters, as discussed in Topic VI, *supra;* the judgment of the Circuit Court is reversed, and the cause is remanded for further trial on these matters only. The Circuit Court will then recast the results in the light of the previous trial and the limited trial on these three points. The costs of this appeal will be taxed by the trial Court against the losing party as finally determined.

Mr. Justice Ward not participating