County Board of Election Commissioners of Lonoke County *v.* Waggoner.

4-3834

Opinion delivered February 11, 1935.

342

*Reed & Beard*, for petitioners.

*Trimble, Trimble & McCrary* and *Chas. A. Walls*, for respondent.

MEHAFFY, J. At a general election held in Lonoke County on November 6, 1934, the question of the three-mill road tax was submitted to the voters. The returns of the judges and clerks were made in the proper way, canvassed by the county board of election commissioners, and the canvass of the returns showed that the road tax had been defeated by 23 votes. The board of election commissioners, upon request, recounted the ballots, and on the recount it was shown that the three-mill road tax was defeated by 119 votes. The result of said election was duly certified as required by law.

Thereafter, on November 17, 1934, J. V. Crutcher, as county judge of Lonoke County, and as a citizen and taxpayer of said county, filed in the circuit court his complaint against the county board of election commissioners, charging certain fraudulent practices in holding the election, and seeking to contest said election on the question of the road tax.

The judge of the Lonoke Circuit Court issued an order taking the ballots, poll books, tally sheets and other election supplies from the custody of the board of election commissioners, and placed them in the hands of E. S. Smith, and restrained and enjoined the commissioners from certifying the result of said election on the question of road tax. It was discovered, however, that the certification had been made before the service of the restraining order.

On January 7, 1935, the county board of election commissioners filed their motion to dismiss the cause seeking to contest the election, on the ground that the circuit court was without jurisdiction. The motion was overruled, and exceptions saved.

On January 14, 1935, the county board of election commissioners filed in this court a petition for a writ of

prohibition to prohibit and restrain the Lonoke Circuit Court and the judge thereof from proceeding with said cause.

Article 7, § 28, of the Constitution reads as follows: "The county courts shall have exclusive original jurisdiction in all matters relating to county taxes, roads, bridges, ferries, paupers, bastardy, vagrants, the apprenticeship of minors, the disbursement of money for county purposes, and in every other case that may be necessary to the internal improvement and local concerns of the respective counties. The county court shall be held by one judge, except in cases otherwise herein provided."

Section 3846 of Crawford & Moses' Digest provides that a contest of the election of certain officers, including the judge of the county and probate courts, shall be in the circuit court of the county where the contestee resides, or where the contestant resides and the contestee may be found.

Section 3850 of Crawford & Moses' Digest provides that the contest of the election of county officers, justices of the peace, constables and other township officers, shall be in the county court.

It is contended by the petitioners that, under the section of the Constitution, § 28, art. 7, above quoted, the county court has exclusive original jurisdiction in this case.

Section 11 of art. 7 of the Constitution reads as follows:

"The circuit court shall have jurisdiction in all civil and criminal cases the exclusive jurisdiction of which may not be vested in some other court provided for by this Constitution."

If, under § 28 of art. 7 of the Constitution, the county court has jurisdiction, such jurisdiction is exclusive, and the circuit court would, of course, not have jurisdiction. But unless the Constitution does vest in the county court jurisdiction to try this contest, then the circuit court has jurisdiction.

Petitioners cite and rely on *Willeford* v. *State ex rel.*, 43 Ark. 62. The court in that case had before it the question of the jurisdiction of the court in the contest of

an election to determine whether or not the county seat should be removed. The court said: "By § 28 of art. 7, Constitution of 1874, exclusive original jurisdiction is vested in the county court in all matters pertaining to the local concerns of the county. And the removal of a county seat is a matter of local concern." The court also said: "The county court has the authority then to determine in the first instance where the county seat is, and whether the conditions have arisen upon which a removal is required. This may, incidentally, involve the question whether the vote has been fairly taken and the necessity, if fraud has supervened, to purge the polls."

Under the law at the time that election was held and that decision was rendered, the election for removal of a county seat was ordered by the county court on the petition of qualified voters, and the returns were made to the county court, and the county court had to make all the necessary orders, and, in order to determine whether the county seat should be changed, the county court had necessarily to inquire into the number of votes cast for and against the change. And this court held that removal of a county seat was a matter of local concern. This decision, however, was rendered in 1884, and the three-mill road tax amendment was adopted in 1899.

Petitioners also call attention to the case of *Wheat v. Smith,* 50 Ark. 266, 7 S. W. 161. That was a proceeding instituted by Smith under the usurpation of office act to oust Wheat, and recover the office held by him. The case was begun in circuit court, and the court said: "The plaintiff's action is not a proceeding to contest an election within the meaning of the statute governing contested elections." But there is nothing in that case that touches the case at bar except the following statement made by the court: "But since that decision, exclusive original jurisdiction in the matter of election contests has been conferred upon the county courts." At that time the law expressly provided that the contest of the election of clerk should be in the county court. Section 2722, Mansfield's Digest.

Petitioners also call attention to the case of *Rees v. Steel,* 73 Ark. 66, 83 S. W. 335. That was also a county seat election contest, and has no application here.

The next case cited is a question of a contest of the vote on liquor license. The returns under the law at the time were not only required to be made to the county court, but the law permitted the county judge to issue license to sell liquor if a majority voted for it, but he could not issue license if a majority of the votes were against it. When the cases relied on by petitioners were decided, the three-mill road tax amendment had not been adopted, and the provision of the Constitution vesting exclusive original jurisdiction in the county court has no application.

After the adoption of the road tax amendment, the case of *Adkins* v. *Harrington*, 164 Ark. 280, 261 S. W. 626, was decided. It was contended in that case that act 275 of the Acts of 1923 was unconstitutional and void, because it provided for the payment of the three-mill road tax levied on certain property in Street Improvement District No. 340 and South Broadway Annex, to the treasurer of the road district, and was therefore violative of art. 7, § 28 of the Constitution. The court said in the last case: "Long after the adoption of the Constitution of 1874, and the above-mentioned section thereof, Amendment No. 3 to the Constitution was voted by the people of the State, and declared adopted on January 13, 1899. By the amendment, it is provided that the county court shall have the power to levy a road tax not exceeding three mills, if a majority of the qualified electors of the county shall have voted therefor at the general election preceding such levy. In Amendment No. 3, no provision is made as to what governmental agency shall receive or disburse the funds collected from such tax. It is only provided therein that such taxes, when collected, shall be used in the respective counties for the purpose of making and repairing public roads and bridges of the respective counties, and for no other purposes." The court also said that, unless there was some constitutional inhibition, the Legislature might exercise absolute control, etc.

If the Legislature or any other body may have control of the road tax, then the county court cannot have exclusive jurisdiction. Unless exclusive jurisdiction is

vested in some other court, then under § 11 of article 7 of the Constitution, the circuit court has jurisdiction. ·

The constitutional provision vesting in the county courts jurisdiction of all matters relating to county taxes, roads, bridges, etc., does not mean that the county court can try all cases that might arise affecting roads and taxes. Many cases may arise, and many have arisen where suits had to be brought with reference to roads, taxes, bridges, etc., and it has never been contended that the county court had jurisdiction to try such cases. The provision with reference to jurisdiction of county courts is somewhat similar to the constitutional provision with reference to jurisdiction of probate courts, and we have said:

"Probate courts have no common-law jurisdiction. The nature, extent and exercise of jurisdiction of probate courts depend on the terms of the constitutional and statutory provisions, and they cannot exercise any powers other than those which have been expressly conferred upon them, or which are necessarily implied from those conferred." *Moss* v. *Moose,* 184 Ark. 798, 44 S. W. (2d) 825. This is also true as to county courts.

Our conclusion is that the circuit court has jurisdiction, and the writt is therefore denied.