GUTHRIE *v.* BAKER.

5-614                                       276 S. W. 2d 54

Opinion delivered March 7, 1955.

*Willis & Walker* and *N. J. Henley,* for appellant.

*Fitton & Adams,* for appellee.

WARD, J. We consider here what testimony is admissible in circuit court on appeal from an order of the county court declaring the results of an election for membership to the County Board of Education.

Appellant and appellee were rival candidates for membership on the County Board of Education in Zone 2, Searcy County at a regular election held March 20, 1954. On March 22, 1954, the Board of Election Commissioners canvassed the reported returns and found therefrom that appellant received 223 votes and appellee received 205 votes in the following designated polling places, viz; Marshall, Landis, and Morning Star. The returns from Harriett [apparently the same as Hickory Hollow] polling place, showing 2 votes for appellant and 23 votes for appellee, were submitted to said Election Commissioners but they refused to recognize or tabulate the ballots. The result was that the Election Commissioners certified appellant as the winner.

Four days later, pursuant to statute, the Searcy County Court, with the County Judge presiding and with election officials from all four previously named polling places present, recognized and canvassed the returns from all of said polling places. The Court found that appellant received 225 votes and that appellee received 228 votes, certifying that result by proper order which is now of record in Book 18 at Page 20 of the Records of Searcy County.

From the above order of the Searcy County Court appellant, in apt time, appealed to the Circuit Court.

Appellant makes no contention that the County Court made any numerical error in tabulating the votes in either of the four polling places mentioned above, and he concedes that this is not a contest proceeding. He did however contend in the trial court and contends here that the County Board of Election Commissioners did not designate "Harriett" as a polling place and that they named no officials and furnished no supplies for an election to be held at such place.

The trial court took the view that, in this kind of a proceeding, appellant had no right to go behind the county court's order or to show that the votes cast at "Harriett" were illegal votes. The trial court therefore held incompetent all testimony offered by appellant

on the above issue, and likewise held incompetent testimony offered by appellee to establish the validity of the "Harriett" votes.

Appellant offered to prove, in effect: That the County Board of Election Commissioners met approximately one week before the election and designated as polling places Marshall, Morning Star, and Landis; That they named election officials for these places only, and; That "Harriett" was not selected as a voting place and no election officials or supplies were provided for such place.

Appellee offered to show: That "Harriett" had been a voting place for many years; That the President and Secretary of the Marshall School District in Zone 2 caused a notice of the election to be run, over their signatures, in the county newspaper on February 26, March 5 and March 12, designating all four of the places heretofore mentioned as polling places; That election supplies were delivered to "Harriett" by the same person and at the same time that supplies were delivered to the other three places, and; That the voters at "Harriett" selected and qualified election officials, held an election, and delivered the official returns, showing the result before stated, to the county clerk.

We find ourselves in complete agreement with the views expressed by the trial judge. The proffered testimony mentioned above was not competent. The trial court was correct in approving the order of the County Court and in dismissing the appeal. He was also correct in concluding that this case is controlled by the decision in *Parsons* v. *Mason,* 223 Ark. 281, 265 S. W. 2d 526.

This action, concededly, is not an election contest. Such a contest might have been instituted under the provisions of Act 366 of 1951 [Ark. Stats., § 80-321 to § 80-323] to challenge the legality of the votes cast at the "Harriett" polling place. By this procedure relief is sought under Act 403 of 1951 [Ark. Stats., § 80-318 to § 80-319]. Under the former Act litigation originates in the circuit court, while under the later Act the circuit

court acquires jurisdiction, as here, by appeal from the county court.

These two Acts were considered and clearly distinguished in the *Parsons* case, *supra*. In regard to jurisdiction of the county court under Act 403 we there said: ''That court merely canvasses the returns and declares the result, its order constituting a permanent record of the outcome of the election.'' In speaking of the jurisdiction of the circuit court on appeal, we then said: ''An appeal from that order would merely test the correctness of the court's tabulation of the returns.'' Following the above and having reference to Act 366, we said: ''An election contest, on the other hand, involves the matter of going behind the returns and inquiring into the qualifications of the electors and other matters affecting the validity of the ballots.''

In accord with the views above expressed, the judgment of the trial court is affirmed.