CHRISTENSON, ET AL. *v.* FELTON, ET AL.

5-1119                                          295 S. W. 2d 361

Opinion delivered November 19, 1956.

R. D. Smith, Jr., for appellant.

Ronald A. May, for appellee.

ED. F. McFADDIN, Associate Justice. This appeal necessitates a study of the school laws of Arkansas in regard to the place of voting in school elections.

At the regular school election in March, 1956, in the Marianna School District,[1] the vote was certified as 441 votes for the tax and 428 votes against the tax. In due time, appellants filed action in the Circuit Court (under Act 403 of 1951) to contest the election; and alleged that many votes for the tax were void. The Circuit Court decided the case on the merits and found that there were 428 valid votes for the tax and 419 valid votes against the tax. The Circuit Court refused to void fifteen votes (for the tax) claimed by appellants to be illegal on the ground that in each instance the voter had failed to vote in his own ward or precinct. So the only question on this appeal is whether the Circuit Court was correct in holding that the said fifteen votes were valid. The Trial Court recognized that, as a legal proposition, a voter must vote in the ward or precinct in which he resides (see *Wilson* v. *Luck*, 203 Ark. 377, 156 S. W. 2d 795; and *Logan* v. *Moody*, 219 Ark. 697, 244 S. W. 2d 499); but the Court said at the beginning of the hearing: ". . . unless the definite precincts were laid off for the purpose of the election, any-

---

[1] The full name of this School District is "Marianna School District A". For convenience we refer to it as the Marianna District.

body in the School District could vote in any box in the District.'' Under the facts — or lack of facts — shown in the record in this case, we find the Trial Court's ruling to have been correct as regards the election here involved.

We have several Legislative enactments that bear on the question here posed:

(a) Section 2 of Act 319 of 1937 (now found in § 80-304 Ark. Stats.) says: ''. . . and each school district, for the purpose of school elections only, shall be a political township.''[2]

(b) Act 56 of 1949 placed the holding of school elections under the control of the County Board of Election Commissioners, and said: ''. . . the general election laws, insofar as applicable, shall apply to school elections.''

(c) Act 403 of 1951 says that the County Board of Election Commissioners ''. . . shall designate all the polling places for each school district in its respective county . . .''[3]

Thus, under the 1951 Act, the Lee County Board of Election Commissioners *should have* designated the voting precincts for the Marianna School District. The voting precincts as used in other elections would not

---

[2] Appellants argue that this section of the law was impliedly repealed by acts which changed the town meeting form of elections to ballot elections; and appellants also argue that Act 56 of 1949 operated to repeal this quoted section. But any such changes did not change the nature of a school district. The word "township" has two meanings: (a) in land descriptions it is an area, as for instance, "Section-Township-Range"; (b) in governmental matters a township is a political subdivision; for instance, § 18-101 Ark. Stats. gives the County Court power to change township lines. School Districts are creatures of the Legislature, which has the right to give or take away powers. (See *State, ex rel. Atty. Gen.* v. *State Board of Education*, 195 Ark. 222, 112 S. W. 2d 18; *Sugar Grove School Dist.* v. *Booneville Special School Dist.*, 208 Ark. 722, 187 S. W. 2d 339; and *Wallace School Dist.* v. *County Board of Education*, 214 Ark. 436, 216 S. W. 2d 790.) So a school district, as a governmental subdivision, would be in the nature of a political township, even in the absence of a Legislative declaration. The subsequent legislation—herein mentioned—prescribing elections, etc. impliedly recognizes a school district as a political township.

[3] The Marianna School District here involved is in no county except Lee.

necessarily be the voting precincts in the school election. This is demonstrated by the map introduced in evidence. It shows that this school district embraces only a small fraction of the territory in each of Fleanor, Hampton, Union and Spring Creek Townships, which are townships set up by the County Court for general election purposes. For aught that appears in the record in this case — in fact, a study of the map inclines us to believe — the voting place for the general election in each of these named townships would be located entirely outside of the boundaries of the Marianna School District. In view of such a situation, the Act 403 of 1951 placed the duty on the County Board of Election Commissioners to designate the polling places for each school district, thereby recognizing that the polling places in school district elections would not necessarily be the same as in other general elections.[4]

The Marianna School District is a "political township" and the conduct of elections in such township is governed by the general election law. Under Act 403 of 1951 it became — and still is — the duty of the County Board of Election Commissioners to lay out and designate the voting precincts in the Marianna School District. Section 3-801 Ark. Stats., relating to the establishment and authorization of precinct boundaries in general elections, is the governing law.

So much for the duty of the Lee County Board of Election Commissioners. Was that duty fulfilled? As to the answer to that question, there is complete silence in the record before us. That there were several voting boxes in the Marianna School District at the time of this election is shown; but it is not shown that any of these boxes had been set up along precinct lines, as heretofore indicated. In the absence of such showing, how can we say that any voter voted in the wrong precinct? We cannot. The record before us presents this dilemma:

If the Lee County Board of Election Commissioners duly designated voting precincts in the Marianna School

---

[4] The Legislature has prescribed methods by which the boundaries of school districts may be changed.

District, the record here fails to show it; and so there is no showing that any of the challenged voters voted in the wrong precinct.

If the Lee County Board of Election Commissioners did not designate voting precincts in the Marianna School District, then such requirement — mandatory before the election — becomes directory[5] after the election, so that voters otherwise qualified will not be disfranchised by the failure of the Election Commissioners to perform certain duties.

On either horn of the dilemma, the Circuit Court judgment must be affirmed.

[5] There are many election laws that are mandatory before the election and merely directory after the election, so that voters will not be disfranchised by the failure of election officials to perform certain duties. *Henderson* v. *Gladish*, 198 Ark. 217, 128 S. W. 2d 257; and *Orr* v. *Carpenter*, 222 Ark. 716, 262 S. W. 2d 280; and see also 18 Am. Jur. p. 263.