DOUGLAS *v.* WILLIAMS

5-3915                                    405 S. W. 2d 259

Opinion delivered May 23, 1966

*Sexton & Robinson,* for appellant.

*Shaw, Jones & Shaw,* for appellee.

OSRO COBB, Justice. On September 28, 1965, a school election was held in the Hartford School District No. 94, Sebastian County, wherein a bond issue involving a 5-mill tax increase was approved, covering the cost of construction of a new elementary school in said district. The measure carried by a vote of 242 to 214. On October 5, 1965, the county court of Sebastian County made and caused to be entered its order finding and declaring the regularity of said election and the passage of the additional millage tax for retirement of the bond issue. This action of the county court was taken in accordance with Ark. Stat. Ann. § 80-318 (Repl. 1960), which provides in part as follows:

"Within ten [10] days after the election the county

court shall canvass the returns and declare the result of the election by an order entered of record."

Said act further significantly provides as follows:

"This order (of the county court) shall be final unless an appeal is taken from it to the *circuit court* within fifteen [15] days after it has been entered." (Emphasis ours.)

Appellants, as citizens and taxpayers of said school district, brought a class action in chancery, seeking an order enjoining the issuance or sale of bonds purportedly authorized by said election. Appellees responded by filing a motion for summary judgment to which was attached a certified copy of the order of the county court referred to above. We quote one paragraph from said motion for summary judgment:

"That the complaint and the entire file herein show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

Appellant's original complaint alleged:

(a) That the resolution placing the millage question on the ballot was not properly adopted by the school board, in that proper notice. of the meeting of said board was not given and said resolution was not properly passed by a majority of the directors of the school district.

(b) That information furnished the State Board of Education by the appellees to obtain approval for said bond election was false.

(c) That the district did not have sufficient students to constitute a district.

(d) That the County Election Commission did not properly meet and set out precinct lines, that the judges

at the voting precincts were not properly appointed, and that the results were not properly certified.

(e)  That the vote count certified by the Election Commission was incorrect and that at least 30 improper ballots were cast.

(f)  That the ballot used in said bond election was improperly worded as to the millage issue.

Appellants were permitted by the court to amend their complaint, making the following additional allegations:

1.  That the school bonds authorized by said election had been issued and sold to T. J. Raney Investment Company.

2.  That due to the pendency of this action T. J. Raney Investment Company was the only bidder for the bonds.

3.  That the advertised conditions and terms for the sale of said bonds were amended by the school board to make the sale conditional upon the board prevailing in this law suit.

4.  That the conditional sale of the bonds was illegal because of material variance from the stated provisions as to the sale, and because the T. J. Raney Investment Company was afforded a special term in the sale not advertised nor made available to other potential bidders.

Appellants in their original complaint sought injunctive relief against the sale of the bonds authorized by said election, and by amendment to the complaint sought cancellation of the sale made of said bonds.

Appellants, in responding to the motion of appellees for summary judgment, conceded that much of the

allegations contained in their pleadings related to the holding of the school election, but insisted that said pleadings presented triable issues of fact and that said action, if not entertained for lack of jurisdiction in equity, should be transferred to the circuit court under the provisions of Ark. Stat. Ann. § 22-405 (Repl. 1962).

On November 18, 1965, the chancellor filed his opinion finding that appellants' complaint and amended complaint should be dismissed for want of jurisdiction in equity. The opinion, consisting of several pages of detailed discussion of the case, is limited to the jurisdictional question and does not refer to the existence or non-existence of triable issues of fact presented in the pleadings.

On November 22, 1965, however, the chancellor entered the following order:

"Now on this 22nd day of November, 1965, this cause comes on to be heard upon the Motion for Summary Judgment heretofore filed herein, and the Court, upon considering the pleadings and the written briefs submitted by counsel, filed his written opinion and finds that there is no genuine issue of fact in this case and that the Motion for Summary Judgment should be sustained.

"IT IS, THEREFORE, BY THE COURT CONSIDERED, ORDERED AND ADJUDGED that the Complaint filed herein and the Amendment thereto be and the same is hereby dismissed."

The case is now before us, appellants urging two points for reversal as follows:

1. *That the trial court erred in granting summary judgment of dismissal in this case.*

2. *That the trial court erred in dismissing appellants' complaint as amended for lack of equity jurisdic-*

*tion and in failing and refusing to transfer the action to the circuit court.*

## Point 1.

We have concluded, after examining appellants' allegations in their original complaint and amended complaint, that same are directed to a challenge of the school election of September 28, 1965, and matters collateral to said election. The circuit court has exclusive jurisdiction of cases involving contests of elections. Ark. Stat. Ann. §§ 80-318 and 80-321 (Repl. 1960). Under the circumstances the chancery court committed no error in finding that it was without jurisdiction in this case.

## Point 2.

Appellants insist that the chancery court had a statutory obligation to transfer the cause to the circuit court upon finding that it had no equity jurisdiction under the provisions of Ark. Stat. Ann. § 22-405 (Repl. 1962). This court has never held that such a transfer from one jurisdiction to another is mandatory where the complaint involved is insufficient on its face to state a cause of action either at law or in equity, a transfer under such a situation being nothing more than an unwarranted exercise in judicial futility. *Rowe* v. *Allison,* 87 Ark. 206, 112 S. W. 395 (1908). In a case very similar on the facts to the instant case, *Rich* v. *Walker,* 237 Ark. 586, 374 S. W. 2d 476 (1964), the chancery court found that it was without jurisdiction and refused to transfer the case to the circuit court because the allegations of the complaint set forth merely conclusions of law and failed to state a valid cause of action. We quote from said case as follows:

"Appellants also contend that if the allegations of the complaint amount to an election contest and state a cause of action at law, the cause should have been transferred to circuit court on authority of Ark. Stat. Ann. § 22-405 (Repl. 1962). It is true

that ordinarily when the chancery court sustains a demurrer to the jurisdiction of the court the cause should be transferred to circuit court if the complaint states an action at law. But here, the chancery court, upon sustaining the demurrer, gave the appellants 15 days to plead further; no additional plea was filed, nor did appellants move for a transfer to the circuit court; and further, a demurrer would have been good in circuit court on account of the allegations of the complaint being merely conclusions of law.''

The striking similarity of the facts in the *Rich* case and the case at bar is further illustrated by an additional quotation from the *Rich* case:

''Moreover, appellants made no contention prior to the election that the ballot title was insufficient or that the election judges had been illegally selected. The complaint also alleges that people, not naming such people, were allowed to vote who were not qualified electors; that the ballots were miscounted, but did not state in what manner they were miscounted; and that the defendants intimidated the voting public and misrepresented the facts to the people of the city, and deliberately destroyed the integrity of the ballots and the election. These allegations are in the nature of an election contest, although not specific enough to amount to more than conclusions of law. Other allegations, such as the defendants 'did other things to destroy the integrity of the ballot' are also merely conclusions of law and are not good against a demurrer.''

We further review the pleadings of appellants as to their sufficiency in stating a cause of action.

1. *The allegation that the resolution placing the millage question on the ballot was not properly adopted.*

This alleges a bare conclusion.

2. *The allegation that information furnished the State Board of Education to obtain approval of the bond election was false.*

Here again we are confronted with an alleged conclusion.

3. *The allegation that in 1948 the Hartford School District No. 94 had fewer than 350 students.*

This is a reference to Initiated Act No. 1 of 1948 (now Ark. Stat. Ann. § 80-426 [Repl. 1960]), which adopted for the purpose of consolidating districts having fewer than 350 students with other districts. As to this allegation, appellees have asked this court to take judicial notice of the fact that the records of the State Department of Education reflect that for the year 1948 the Hartford School District No. 94 had in fact 737 students, and we take such notice under authority of *Seubold* v. *Fort Smith Special School District,* 218 Ark. 560, 237 S. W. 2d 884 (1951).

4. *The allegations that the County Election Commission did not properly meet, judges were not properly appointed, and results were not properly certified.*

These are obviously allegations of conclusions without stating any facts upon which such conclusions could be reached.

5. *The allegations that the Election Commission certified incorrect results and that some 30 improper ballots were cast.*

Appellants made no allegations of fact in support of their contention that improper ballots were cast, nor did they suggest whether the alleged improper ballots were cast for or against the bond issue; and finally, we note that no allegation is made that the alleged improper ballots, if eliminated from the results of the election, would have rendered the results of said election doubt-

ful in any way, nor is such contention or allegation made under any section of appellants' complaint as amended. In order to destroy the result of an election it must be shown that wrongs against the freedom of election have prevailed, not slight and in individual cases, but generally and to the extent of rendering the results doubtful. *Lewelling* v. *Mansfield School Dist. No. 76*, 240 Ark. 217, 398 S. W. 2d 665 (1966).

6. *The allegation that the ballot was improperly worded on the millage issue.*

Here again is a stated conclusion without any facts alleged in support of the conclusion.

7. *The original complaint further charged that the ballots were improper because either they were not signed, they were not signed by the proper person, or they were not dated.*

The ballot thus challenged was not even made an exhibit to the pleadings and here we are presented with the statement of nothing more than conclusions. Furthermore, voters are not required to sign their ballots, and whether or not the ballot was dated when printed would be determined by a true copy of the ballot itself.

Appellants in their amended complaint alleged the sale of the bonds; that there was only one bidder on the bond issue because of the advertised pendency of this action; that the conditions and terms for the sale of the bonds were specifically amended by the school board to make the sale of said bonds conditional upon the board prevailing in this law suit; and that the said conditional sale of said bonds was illegal because it varied considerably from the stated provisions for the sale of school bonds; and further, that the purchaser of same had been afforded a special term in the sale not advertised nor made available to other potential bidders.

The school board had a duty to the general public,

in attempting to sell the bonds while this action was pending, to put the public on notice as to the pendency of this action, and the offer of sale of the bonds conditioned upon affirmance of this case here was not improper but quite necessary to all concerned. While appellants allege that some special term was afforded to the purchaser of the bonds in some manner not advertised or made available to other potential bidders, the pleading states no allegations of fact upon which such conclusion rests.

Appellants have cited and relied upon the following case authorities as to this Point 2:

*Phillips* v. *Rothrock,* 194 Ark. 945, 110 S. W. 2d 26 (1931). This was a case involving the passing of an initiated act concerned with the payment of salaries to county officials. It was not brought to contest the returns of the election, or the certification of the vote upon the proposed measure. It was conceded that a large majority was cast in favor of the measure and that the returns of this vote were properly certified. The objection made was that the submission of the question at the election was unauthorized under amendment No. 7 (the initiative and referendum amendment) and that the act in question, therefore, did not become a law notwithstanding the favorable vote thereon. We find nothing in this case which sustains appellants' position in the case at bar.

*Arkansas-Missouri Power Corp.* v. *City of Rector,* 214 Ark. 649, 217 S. W. 2d 335 (1949). This was a case involving the wording of a ballot title in an election called by ordinance of a municipality to determine whether a bond issue should be approved to provide revenue for building a light plant and power distributing system. It had nothing to do with school elections, and provides no support for appellants' position.

We have concluded that, had the chancellor transferred this cause to the circuit court on the pleadings

before him as suggested by appellants, same could then have been reached by demurrer because of the failure of the pleadings to state a valid cause of action, and consequently the chancellor committed no error in refusing to transfer the case to the circuit court. See *Rich* v. *Walker, supra.* Of course, a dismissal of a complaint on the ground of failure to state a cause of action is without prejudice to the filing of a new complaint which states a valid cause of action. See *Barrentine* v. *The Henry Wrape Co.,* 113 Ark. 196, 167 S. W. 1115 (1914); *Thompson* v. *Semmes,* 219 Ark. 67, 239 S. W. 2d 589 (1951).

We therefore conclude that the chancellor properly held that equity was without jurisdiction in this case and that no obligation rested upon the chancellor to transfer the case to the circuit court because the complaint as amended was insufficient to state a cause of action.

The judgment of the trial court in dismissing the case is affirmed.

BLAND, J., not participating.