E. R. HENRY, JR., PATRICK B. DILLON, HARRY C. NORRIS AND CHARLES W. TAYLOR v. C. C. STUART, NOEL NEWTON AND BURT SOUTHARD, AS MEMBERS OF THE DESHA COUNTY BOARD OF COMMISSIONERS

5-5760                                        473 S.W. 2d 165

Opinion delivered November 15, 1971
[Rehearing denied December 20, 1971.]

*Dickey, Dickey & Drake,* for appellants.

*Gill & Clayton,* for appellees.

J. FRED JONES, Justice. E. R. Henry, Jr. and the other named appellants filed a taxpayers suit in the Desha County Circuit Court against C. C. Stuart and other members of the Desha County Board of Election Commissioners seeking to contest the vote by which a school millage tax increase for the erection of a school building was adopted at an election held within the boundaries of the Dumas Special School District on March 19, 1971. The complaint alleges that the district lies in Lincoln County as well as in Desha County, but that its administrative office is in Desha County.

The Commissioners demurred to the complaint for defect in parties in that the members of the Desha County Board of Election Commissioners were not proper parties to the action, and on the alternative ground that the complaint did not state facts sufficient to constitute a cause of action. The trial court sustained the demurrer on both grounds and the original plaintiffs as appellants here, rely on the following points for reversal:

> "The court erred in finding that the Desha County Election Commissioners were not proper parties to this suit.
>
> The court erred in finding that the complaint did not state a cause of action.
>
> The election laws violated were necessary for a free and intelligent casting of the vote and the court clearly erred in dismissing the appellant's prayer for a recount."

Having reached the conclusion that the trial court was correct in sustaining the demurrer for defect in parties, we do not reach the appellants' second and third points.

Under the alleged irregularities set out in the complaint, the integrity of the "Mitchellville Box" was chal-

lenged for the reason that two election judges expressed preference for the measure voted upon throughout the day of the election, and that in this same box one Rozener Malone was allowed to vote without appearing at the polling place. The integrity of the "Library Box (Dumas Box 1-A)" was challenged on the ground that no duplicate copy of the voters list was posted outside the polling place as required by law, and that after the ballot envelope was sealed, an election official from this polling place opened the envelope without the authority of a court order. The complaint alleged that there were three other boxes where the total of votes cast in the election did not total the number of voters who registered to vote on said date, and that there were no canceled ballots received separately from the other ballots and turned over to the election commissioners to explain the differences. The complaint alleged that in the polling place called "Lee's Washateria and Dumas Library," the voters list did not include the addresses of the voters, thereby preventing a determination of whether the 715 voters lived outside the polling place jurisdiction, and that in the "Pickins Box" the addresses of four voters reflected that they lived outside the precinct where they voted, thereby rendering the votes invalid.

The answer to the question presented under the appellants' first point calls for a determination of the proper parties defendant in a suit of this nature. We are cited no statutory provision as a direct answer to the question and, following our own research, we conclude that there is none. The cases cited by the appellants are of no assistance for they either turn on facts different from those in the case at bar, or they do not reach the question now before us.

The case of *Phillips* v. *Melton,* 222 Ark. 162, 257 S. W. 2d 931, cited by the appellants, involved a contest for the office of school director, and while the election commissioners were joined as parties defendant along with the *certified candidate,* the question of whether the commissioners were proper or necessary parties was not raised and that issue was not involved.

In *County Board of Election Commissioners of Lonoke County* v. *Waggoner*, 190 Ark. 341, 78 S. W. 2d 821, cited by the appellants, the vote by which a three mill road tax was defeated was the subject of the contest, and whether the circuit court or the county court had jurisdiction was the question involved. Following a recount of the votes in that case, the election commissioners certified that a majority had voted against the road tax and the county judge filed a taxpayers suit against the board of election commissioners charging fraudulent practice in the holding of the election and seeking to contest the election on the question of the road tax. The judge of the Lonoke County Circuit Court issued an order impounding the ballots, poll books and other election supplies and restraining the commissioners from certifying the results of the election on the question of the road tax. It was discovered, however, that the results of the election had already been certified before the restraining order was served on the commissioners. The county board of election commissioners then filed a motion to dismiss the complaint seeking to contest the election *not on the grounds that they were improper parties* to the suit, *but on the grounds that the circuit court was without jurisdiction.* The motion was overruled by the trial court and the matter reached this court on a petition for a writ of prohibition *filed by the commissioners* to prohibit the Lonoke Circuit Court from proceeding in the matter and contending that exclusive jurisdiction of the cause was in the Lonoke *County* Court. So the question presented in that case was whether the county court or the circuit court had jurisdiction of election contests involving county road tax, and the question of whether the election commissioners were proper parties was never raised and was not involved.

The appellants cite *Gregory* v. *Gordon*, 243 Ark. 635, 420 S. W. 2d 825, in which the election commissioners were proper parties defendant but the question of proper parties was not raised or answered in that case. In *Gregory* the suit was brought by property owners against the election commissioners to void an entire election as to a public library tax because of defective ballots prepared and furnished by the election commis-

sioners. No testimony was taken in that case but it was not denied that 95% of the voters in the election were furnished defective ballots. It was the direct obligation and duty of the election commissioners to prepare and furnish proper ballot forms and the entire election on the issue involved was voided as a direct result of the commissioners' dereliction in the preformance of their legal ministerial duties. The *Gregory* case is clearly not in point with the case at bar.

In the case of *Christenson, et al* v. *Felton, et al,* 226 Ark. 985, 295 S. W. 2d 361, the last case cited by the appellants, the vote by which a school tax was certified as adopted was being contested on the allegations that there were many void votes cast in the election. Fifteen of the votes were challenged as illegal on the ground that the voters had failed to vote in their proper school district polling places. The trial court, finding that the election commissioners had never designated polling places for each school district in the county, held that the 15 votes were valid. The reported opinion in *Felton* does not indicate whether "Felton, et al" were members of the election commission or members of the school board, but the appellants in the case at bar state in their brief, that the *Felton* case "as revealed by the original record filed in that case," is factually on all fours with the case at bar. We do not so construe the original record in *Felton*. The original record in the *Felton* case shows that the original complaint was filed on April 5, 1956, and it does name Dan Felton, Jr. and other members of the board of election commissioners as the only parties defendant. But the original record also reveals that on the same day the complaint was filed, it was amended to add as parties defendant, the named members of the board of directors of the Marianna, Arkansas School District "A."

Having found no statutory provision or case law as a direct answer to the question here involved, we simply hold that the directors, or school board members, of the Dumas Special School District were the proper parties defendant in this case, and that the members of

the Desha County Board of Election Commissioners were not.

The duties of county boards of election commissioners are set out in Ark. Stat. Ann. § 3-506 et seq. (Supp. 1969), but unlike in *Gregory* v. *Gordon, supra,* the complaint in the case at bar does not allege or suggest that the defendant commissioners exceeded their statutory authority or that they violated, or failed to properly perform, any of the duties imposed upon them by law. Ark. Stat. Ann. § 3-609 (Supp. 1969) provides for reimbursement of expenses incurred by the county election commissioners in holding an election, but there is no provision for reimbursement of expenses incurred in defending an election contest. Ark. Stat. Ann. § 27-801 (Repl. 1962) provides that every action must be prosecuted in the name of the real party in interest. So assuming, that in the case at bar, the tax levy failed of adoption on the face of the election returns as certified, no one could seriously contend that the county election commissioners, acting in their official capacity, rather than as taxpayers, would be the real or proper parties in interest to prosecute an action to contest the election. This is especially true when the school district, as here, lies in two adjoining counties.

We turn now to the interest of the school board members. Amendment 40 to Article 14 of the Arkansas Constitution provides:

". . . school districts are hereby authorized to levy by a vote of the qualified electors . . . an annual tax for . . . the erection and equipment of school buildings. . .

The Board of Directors of each school district shall prepare, approve and make public not less than sixty (60) days in advance of the annual school election a proposed budget of the expenditures deemed necessary to provide for the foregoing purposes, together with a rate of tax levy sufficient to provide the funds therefor, including the rate under any continuing levy for the retirement of indebtedness. If

a majority of the qualified voters in said school district voting in the annual school election shall approve the rate of tax so proposed by the Board of Directors, then the tax at the rate so approved shall be collected as provided by law. In the event a majority of said qualified electors voting in said annual school election shall disapprove the proposed rate of tax, then the tax shall be collected at the rate approved in the last preceding annual school election."

Ark. Stat. Ann. § 80-602 (Repl. 1960) authorizes the electors of each school district to vote a tax for the support of schools in the district:

"* * * Provided, the suggested rate to be voted on may be placed on the ballot on order of the school directors or representatives of the district, and such ballots may show the portion of the tax to be voted in the building fund as is provided by law, and the vote on such tax in the building fund may be for successive years as provided by law. The rate of tax receiving the greatest number of votes at the school election shall be the tax to be levied in the district. If no annual election shall be held in any district in the State at the appointed time, the board of directors of such district may call a special election for the purpose of voting on the district tax and for school directors."

Thus, it is seen that school directors are charged with numerous and varied duties under the law. They are not only charged with the constitutional responsibility of ascertaining the amount of money needed for the construction and operation of schools, and the rate of taxation necessary to raise the amount needed; they have the added statutory responsibility of seeing that the necessary rate is placed on the election ballot to be approved or rejected by the voters. Section 80-602, *supra*.

It goes without saying that district school directors are charged with the responsibility of spending the money raised for school purposes by taxation within their re-

spective districts, and they are charged with the responsibility and authority to:

"Do all things necessary and lawful for the conduct of an efficient free public school or schools in the district." Ark. Stat. Ann. § 80-509 (m) (Repl. 1960).

Consequently, we can conceive of no person or public entity having a greater interest in the vote by which a tax levy for the erection of a district school building is adopted or rejected than the school district in which an election is held for that purpose; and we can conceive of no one having a greater interest or duty in defending a suit contesting the vote by which such tax levy is adopted, than the directors of the district who found and declared the need, ascertained the amount needed and arranged for its inclusion on the election ballot. So we hold that the members of the school board of directors and not the county board of election commissioners were the proper parties to be made defendants in the case at bar.

The judgment is affirmed.