Maurese ADAMS et al *v.* DIXIE
SCHOOL DISTRICT NO. 7 et al

78-143 570 S.W. 2d 603

Opinion delivered September 5, 1978
(In Banc)

*Aaron L. Woodruff,* for appellants.

*Berl S. Smith* and *Stephen M. Reasoner,* of *Barrett, Wheatley, Smith & Deacon,* for appellees.

CONLEY BYRD, Justice. Pursuant to consolidation resolutions of the Boards of Dixie School District No. 7 and Brookland School District, the County Board of Education caused the consolidation issue to be submitted to the qualified electors of the respective school districts. The issue passed in Dixie School District by a vote of 245 For and 208 Against. Appellants, Maurese Adams, et al, ten qualified electors of Dixie School District brought this action against the respective school districts and their Boards of Directors alleging that 50 named persons, not qualified electors, were illegally allowed to vote in the Dixie School District and that if their votes were cast out the results of the election in Dixie School District would be against consolidation. The trial court sustained a demurrer by the respondent school districts on the basis that it had no jurisdiction to hear the contest.

To sustain the action of the trial court the School Districts and their Boards, the appellees, contend:

"In this appeal concerning the contest of an election, the appellees would at the very outset point to the fact that the question involved is solely one of statutory construction, there being no right or remedy at common law to contest an election. (26 Am. Jur. 2d ELECTIONS, Sec. 316; *State Ex Rel Brooks* v. *Baxter,* 28 Ark. 129 (1873), *Baxter* v. *Brooks,* 29 Ark. 173 (1874) ) While the point is obvious, and while appellants appear to concede it at the beginning of their brief, as their

argument progresses they tend to forget it and rely on the 'do right rule.'

There are three avenues of possible election contest under the statutes. There is appeal of the County Court order certifying school election results under Ark. Stat. Ann. 80-318, there is contest of school elections under Ark. Stat. Ann. 80-321-4, and there is the general election contest provided in Ark. Stat. Ann. 3-1001-9."

Appellees' first premise is contrary to the Constitution of Arkansas, Art. 19, § 24, which provides:

"The General Assembly shall provide by law the mode of contesting elections in cases not specifically provided for in this Constitution."

In *Sumpter* v. *Duffie,* 80 Ark. 369, 97 S.W. 435 (1906), and *Glidewell* v. *Martin,* 51 Ark. 559, 11 S.W. 882 (1889), we construed this provision of our Constitution, "to mean that a place as well as a manner of trial shall be provided" for election contests.

Appellees correctly point out that appellants cannot purge the alleged illegal votes in a proceeding under Ark. Stat. Ann. § 80-318 (Repl. 1960), because in *Guthrie* v. *Baker,* 224 Ark. 752, 276 S.W. 2d 54 (1955), we held that a proceeding under Ark.Stat. Ann. § 80-318 would only test the correctness of the tabulation of the returns and that it could not be used for going behind the returns and inquiring into the qualifications of the voters. See also *Parsons* v. *Mason,* 223 Ark. 281, 265 S.W. 2d 526 (1954).

Appellees then contend that the clear statutory language of Ark. Stat. Ann. §§ 80-321 through 80-324 (Repl. 1960) and Ark. Stat. Ann. § 3-1001 (Repl. 1976) cannot be used to give the circuit court jurisdiction because both statutes provide only for contests of election of candidates for office. Appellants point out that election contests involving matters other than candidates have consistently been maintained or recognized. In doing so appellants point to such decisions as *Buffington* v. *Carson,* 219 Ark. 804, 244 S.W. 2d 954 (1952);

*Christenson* v. *Felton,* 226 Ark. 985, 295 S.W. 2d 361 (1956); and *Douglas* v. *Williams,* 240 Ark. 933, 405 S.W. 2d 259 (1966). In response appellees correctly assert that the issue now raised was not before this Court in any of the decisions cited by appellants.

In view of the foregoing contentions, we must then turn to the provisions of Ark. Stat. Ann. §§ 80-321 — 80-324 (Repl. 1960). We note that those sections were compiled from Act 366 of 1951. That Act as passed by the General Assembly and approved by the Governor provided:

"AN ACT to Divest County Boards of Education of Jurisdiction to Hear and Determine School Election Contests: to Vest such Jurisdiction in the Circuit Courts; and for Other Purposes.

*Be It Enacted by the General Assembly of the State of Arkansas:*

SECTION 1. If the election of any member of a county board of education or member of a school district board of directors be contested it shall be before the circuit court of the county wherein the contested office exists.

SECTION 2. All actions to contest such election shall be commenced within twenty (20) days after the election at which any such person was elected.

SECTION 3. Actions to contest election of county and district school officers shall follow the procedure set out in Act 34 of the Arkansas Acts of 1875, Section 68 (Ark. Stats., 1947, Sec. 3-1204).

SECTION 4. It is hereby declared that the purpose of this Act is to divest county boards of education of jurisdiction to hear and determine school election contests and to vest such jurisdiction exclusively in the circuit courts.

SECTION 5. All laws and parts of laws in conflict herewith are hereby repealed."

When we construe Act 366, *supra,* in accordance with the constitutional mandate given to the General Assembly, Art. 19, § 24 of the Arkansas Constitution, *supra, (i.e.* that a place as well as a manner of trial shall be provided for election contests), we must conclude that the title ot Act 366 as well as the purpose stated in section four thereof is rather conclusive that the statutory intent was to place the jurisdiction for the contest of all school election matters in the circuit court. It follows that the trial court was in error in holding that it had no jurisdiction to hear the election contest. Consequently, we need not consider the applicability of Ark. Stat. Ann. § 3-1001 (Repl. 1976).

In view of the nature of this litigation and the effect it may have upon the administration of the school districts involved, the Clerk is directed to issue an immediate mandate.

Reversed and remanded.

FOGLEMAN and HICKMAN, JJ., concur.

JOHN A. FOGLEMAN, Justice, concurring. I agree with the result reached in the majority opinion, but I do not think that result can be reached on the basis of the statutes and the constitutional provisions quoted, without more. In approaching the problem presented, we must resort, not only to the mandate of Art. 19, § 24, but also the the rule of liberal construction given statutes pertaining to election contests.

These rules of law are simply a guide to our construction of pertinent statutes, however, because the constitutional mandate is to the General Assembly, not the courts, and the judicial department is not licensed to perform any duty imposed upon the General Assembly which that independent and separate branch of government fails to perform. I also agree with appellants that election contests were unknown to the common law and that, in the absence of statute, there is no such remedy.

Still, I reach the same conclusion as that reached by the majority when the legislative history of school election law is considered and when the rule of liberal construction is follow-

ed. That rule requires that statutes providing for contesting elections shall be liberally construed to the end that there be a ready remedy whereby compliance with election laws may be assured. *Reed* v. *Baker,* 254 Ark. 631, 495 S.W. 2d 849; *Gunter* v. *Fletcher,* 217 Ark. 800, 233 S.W. 2d 242; *LaFargue* v. *Waggoner,* 189 Ark. 757, 75 S.W. 2d 235; *Robinson* v. *Knowlton,* 183 Ark. 1127, 40 S.W. 2d 450.

In 1931, the General Assembly undertook to rewrite most of the law governing the public school system by Act 169, a very comprehensive act entitled "An Act to Provide for the Organization and Administration of the Public Common Schools." See *Attwood* v. *Rogers,* 206 Ark. 834, 177 S.W. 2d 723. The General Assembly called it the "School Law" in § 1. Most of the existing laws governing public schools were specifically repealed by § 196 of the act. Among those repealed were the provisions which had governed the consolidation of school districts and elections held on the question. Thus, after the passage of the 1931 act, it provided the only law governing consolidation of school districts.

Supervision of the public schools was vested in a county board of education by § 29 of that act.[1] Sec. 30 required that the returns of all annual school elections be made to the county superintendent of schools, who was required to call a meeting of the county board within 15 days after the election to canvass the returns.[2] This section, however, conferred jurisdiction of all school election contests on the county board of education in the following language:

> * * * Any contest of any results of any election in any school district shall be brought within fifteen days after such election, if the results thereof shall have been certified to the county clerk five days previously, or within five days after such results have been certified, and not thereafter. The county board of education shall hear

[1]Sec. 29 was repealed by Act 184 of 1935, but the county board of education was recreated by Act 327 of 1941 [Ark. Stat. Ann. § 80-201 (Repl. 1960)].

[2]This procedure is now governed by Act 403 of 1951, so that the canvass of returns is made by the county court. See Ark. Stat. Ann. § 80-318 (Repl. 1960). See also, *Shimek* v. *Janesko,* 188 Ark. 418, 66 S.W. 2d 626; *McLeod* v. *Richardson,* 204 Ark. 558, 163 S.W. 2d 166.

and decide all contests, and make their findings thereon, and such findings shall be conclusive, subject to appeal by the losing party, to the Circuit Court within ten days * * *

Furthermore, the county board of education was authorized by § 42 of the act to exercise such powers and jurisdiction with reference to the making and enforcement of orders as were formerly conferred upon the county courts.

By § 34, the county board of education was empowered to dissolve a school district and annex its territory to another district in the manner and under the conditions provided in the act.[3] This included the power to consolidate school districts into another and new district and to do all things pertaining to consolidation of school districts, with consent of a majority of the electors in each district affected, as shown by petitions or elections as provided by the act. Sec. 66, Act 169 [Ark. Stat. Ann. § 80-404 (Repl. 1960)]. Sec. 49 contained the language: "Any contests of such elections may be made within the time herein provided for contesting school elections, and not thereafter." The calling of a special election by the county board of education was authorized by §§ 81, 83 and 84 of the act. The conduct of special elections and the handling of the returns seem to be governed by the provisions for the annual school election, except as specifically otherwise provided. See §§ 81-92. Clearly, the General Assembly intended that such elections be subject to contest. It seems just as obvious to me that the county board of education had jurisdiction of such contests under Act 169. In 1933, the county boards of education were abolished and their powers and duties transferred to the county courts. Act 247 of 1933. See also, Act 184 of 1935; *McLeod* v. *Richardson,* 204 Ark. 558, 163 S.W. 2d 166. Thus, jurisdiction of all school election contests was transferred to the county courts of the respective counties. *Shimek* v. *Janesko,* 188 Ark. 418, 66 S.W. 2d 626.

By Act 327 of 1941, the newly created county board of education was given all powers and jurisdiction with

---

[3]This power is now vested in the county board by Act 327 of 1941 [Ark. Stat. Ann. § 80-213 (Repl. 1960)]. *Byrd* v. *State,* 240 Ark. 743, 402 S.W. 2d 121.

reference to the making of orders and enforcing the same as were formerly conferred upon the county courts. Ark. Stat. Ann. § 80-215 (Repl. 1960). Furthermore, by the same act, all powers, duties and responsibilities respecting the public schools then vested in the county courts were transferred to the county boards of education, except for the canvassing of returns and the certification of results of school elections. Ark. Stat. Ann. § 80-213 (Repl. 1960). Jurisdiction then was transferred to the county board of education by Act 327 of 1941. Ark. Stat. Ann. §§ 80-213, 80-215 (Repl. 1960). *McLeod* v. *Richardson*, supra; *Atwood* v. *Rodgers*, 206 Ark. 34, 177 S.W. 2d 723.

Thus, when Act 366 of 1951 was passed, the county board of education did have jurisdiction of school election contests. By a liberal construction of Ark. Stat. Ann. § 80-409, it may be said that the General Assembly intended that contests of consolidation elections be governed by statutes pertaining to school elections generally. A liberal construction of Act 366 of 1951 (Ark. Stat. Ann. §§ 80-321 — 80-324), with particular emphasis on § 4 (Ark. Stat. Ann. § 80-324), requires that we hold that jurisdiction of all school election contests was vested in the circuit courts. Cf. *Jones* v. *Lawless*, 226 Ark. 118, 288 S.W. 2d 324.

In *McLeod* v. *Richardson*, supra, we were faced with a similar situation. We noted there that the General Assembly appeared to have overlooked election contests and failed to affirmatively provide for them, but we found that the provisions of §§ 80-213 and 80-215 were sufficient basis for this court to hold that the legislative intent was to transfer jurisdiction of election contests from the county courts to the county boards of education. We said that, as the result of the oversight, "the deficiency must be supplied from the spirit of the act: from what was intended in effect, but not said." We are as fully justified in doing precisely the same thing here, when the full legislative history of the matter prior to the passage of Act 366 of 1951 is considered. Any other result would imply that the General Assembly had ignored the clear legislative mandate of Art. 19, § 24. We should not do so when an opposite result can reasonably be reached.

Appellants point out that at least two cases involving

186

school election contests where the contest related to issues submitted, rather than candidates, have reached this court, and the question of the circuit court's jurisdiction was not raised in either. See *Christenson* v. *Felton*, 226 Ark. 985, 295 S.W. 2d 361; *Cowger* v. *Mathis*, 255 Ark. 511, 501 S.W. 2d 212. Appellees say that these cases are of no significance because the question was never raised. Of course, if there was a clear want of jurisdiction in this case, appellees are correct, and we should not consider this fact. Yet, when subject matter jurisdiction is involved, there can be no waiver of the jurisdictional question and either the trial court or the appellate court may, and should, raise the question. The fact that the capable lawyers involved in these cases, the two separate circuit courts from which they came and every member of this court failed to raise the question of jurisdiction is not without significance.

We are uncertain, from the record as abstracted, as to the statute invoked for this consolidation. But even if the alternative method provided by Ark. Stat. Ann. §§ 80-446 — 80-453 (Supp. 1977) governed, that act (Act 125 of 1961, as amended) provides that, except as provided in the act, all matters regarding consolidation of districts and all other actions taken pursuant to that act must be in accordance with existing laws. The existing laws would include those governing school election contests.