## Robert GOODALL et al *v.* T. O. ADAMS et al

82-242                                    640 S.W.2d 803

Supreme Court of Arkansas
Opinion delivered October 29, 1982
[Rehearing denied November 15, 1982.]

*Irwin & Kennedy,* by: *Robert E. Irwin,* for appellant.

*Hurst Law Office,* by: *Larry Honeycutt,* for appellee.

DARRELL HICKMAN, Justice. The underlying issue in this case is a wet-dry election. But the only issue decided by the trial court and to be decided by us is whether the voting precinct in which that election is proposed is legal.

The Circuit Court of Conway County held the law had been substantially complied with and the precinct was "legal." We agree.

The controversy involves a liquor store located outside the city limits of Morrilton. It is located in what was

originally Welbourne Township, a large township virtually surrounding the City of Morrilton.

In 1975, the Conway County Election Commission divided Welbourne Township into two parts, calling one Welbourne West, the other Welbourne East. This division was made after Amendment 55 to the Arkansas Constitution was adopted to create new districts, equal in population, for the county's new nine justices of the peace.

On October 29, 1975, the Election Commission caused a document entitled "Proposed Justices of the Peace Districts for Conway County" to be filed with the county clerk. It was signed by all three commissioners. It named and defined Welbourne East and West precincts. But no formal document was filed adopting that proposal. Nor were the parties able to find or produce any minutes of the Election Commission that approved the new precincts, although the chairman said the commission kept minutes.

Nonetheless, after 1975 all elections held in Conway County were conducted in Welbourne East and Welbourne West as though the precincts legally existed. Separate precinct "binders" were maintained in each precinct containing only the voter registration information for that respective geographic area. Separate judges and clerks served in each precinct in every election since 1975. Separate polling places were adopted and maintained, whereas before all of Welbourne Township voted at the courthouse in Morrilton. Separate justices of the peace were elected serving the respective areas; all elected officials, state and local, were voted on separately. (But only one constable is serving the area originally designated as Welbourne Township.)

In December, 1981, a document styled "Proposed Justices of the Peace Districts for Conway County" was filed with the Secretary of State. It was prepared in answer to the 1980 census to insure the justices of the peace districts complied with the principle of "one man-one vote." It defined more specifically the boundaries of Welbourne East and Welbourne West but did not alter in any way existing boundaries. In fact it did not alter any of the nine districts

adopted in 1975. For example, the first document filed in 1975 with the clerk regarding Welbourne West read:

*District 2*: Welbourne (west of 1970 census line and west city limits of Morrilton) and Ward 2 (bounded by East Street on the east, south to Green Street, west to West Street, north to city limits, east to East Street); 2034 people.

The document filed with the Secretary of State read:

DISTRICT 2: Ward 2 and West Welbourne Township better defined as that portion lying West of the Morrilton City Limits to the Pope County line, North to Gregory Township line, South to the Arkansas River. Highway #95 North of Morrilton is the dividing line of Welbourne East and West Township. (2188 people)

Certain citizens of Welbourne West sought an election on the wet-dry issue and filed with the county clerk a petition signed by more than 15% of the electors of that precinct. It was accepted, approved, and ordered on the ballot for the general election.

The opponents' *only* argument is that Welbourne West is not a valid election precinct pursuant to Ark. Stat. Ann. § 3-601 and, therefore, the election cannot be valid — the old Welbourne Township is the only legal precinct.

The relevant portion of the statute reads:

The action of said commissioners in changing the voting place in any precinct, or in altering the boundaries of any precinct, or in establishing any new one, shall be entered in the record to be kept by them, and a copy of said order shall set out intelligently and accurately the boundaries of said precincts as so altered or established, shall be filed with the Clerk of the County Court who shall record the same at full length on the record book on which the minutes of the proceedings of the County Court are recorded.

The trial court found substantial compliance with this law, observing that:

> All requirements of Ark. Stat. 3-601 have in fact been complied with, except the filing of an appropriate order. Since the precinct has in fact been established, the technicality of filing an order can be performed at any time.

The court observed that all but two of the 28 or 29 precincts in Conway County may suffer from the same defect that exists in this case — the lack of a formal order of approval. Two of the three election commissioners testified and both confirmed they had agreed and approved the change of the precinct. The order would be entered by the commissioners.

In fact, one said the 1981 document was filed with the county clerk with a map, but the records do not reflect it was in fact filed. The chairman said he and the commission, so far as they knew the law, had tried to comply with the law, and stood willing to abide by any court orders.

We find no controlling precedent. In *Glover* v. *Russell,* 260 Ark. 609, 542 S.W.2d 751 (1976), we dealt with a precinct imperfectly formed but it was created only for one election and that was the deciding factor.

In *Lovewell* v. *Bowen,* 75 Ark. 452, 88 S.W. 570 (1905), we recognized that voters should not be disenfranchised who for years had voted within recognized township lines that were not actually the true lines. *See* also *Christenson* v. *Felton,* 226 Ark. 985, 295 S.W.2d 361 (1956).

The precinct in question has existed in fact through at least three elections. Its boundaries are not questioned by anyone. It has been recognized by the election officials and voters as a valid precinct and the only question of legal insufficiency is the lack of a formal order. As the trial court observed, such an order could be entered at any time. It is a mere technicality. We agree.

Affirmed.