Mr. Ron Oliver, Chairman Pulaski County Election Commission 201 S. Broadway, Suite 360 Little Rock, Arkansas 72201
Dear Mr. Oliver:
This is in response to your request for an opinion on several questions relating to legislative districts in Pulaski County. Specifically, you note that "[n]ew State Representative and State Senate district maps received from the Office of the Secretary of State have different boundaries from the maps used by Pulaski County since 1992. Those differences drastically affect at least one State Representative District in Pulaski County, and others to lesser degrees. Some State Senate boundaries are affected also." You state that: "[i]f these new maps are official and deemed correct, the Pulaski County Election Commission must address several issues. . . ." Your questions in this regard are as follows:
 1. Existing precinct maps for Pulaski County have been on file with the Secretary of State and the State Highway Department since 1992. Has the state acquiesced in accepting the district boundaries currently in use by Pulaski County for the past eight years?
 2. In light of candidate and voters reliance upon these maps, should the current districts as shown by Pulaski County be maintained until redistricting occurs in 2002?
 3. How would the adoption of the new maps with different boundaries affect an unopposed incumbent found to no longer live (and to have never lived) in the district he has been elected to represent. What, if any, corrective measures should be taken? For example, could the incumbent move into the district he represents? Should the position be declared vacant and a special election held? If so, what is the proper procedure?
 4. Four Preferential Primary Elections and three General Elections have been held based upon these boundaries. The Primary of 1998 nominated candidates from areas by voters that may be deemed ineligible to vote for a candidate in November. How will this affect the General Election of 1998?
A recitation of the relevant Arkansas constitutional provisions governing reapportionment is necessary prior to answering your questions.
Article 8 of the Arkansas Constitution governs reapportionment of state legislative seats. It creates a "Board of Apportionment" and invests it with the duty to apportion legislative seats in accordance with the provisions of Article 8. The Board must, on or before February 1 immediately following each federal census, reapportion the state for representatives. Arkansas Constitution, art. 8, § 4. The report of the board is filed with the Secretary of State, and becomes effective thirty days after filing. Arkansas Constitution, art. 8, § 4. Section 6 of Article 8 provides that "[a]t the next general election for State and County officers ensuing after any such apportionment, Representatives shall be elected in accordance therewith. . . ."[1]
You have not provided any facts as to how the current discrepancy in district lines occurred. It is my understanding that an investigation by the County is underway to determine this issue. In addition, your questions are premised upon an assumption that the new maps are correct, and that the ones previously employed by Pulaski County are incorrect and do not accurately reflect the plan filed by the Board of Apportionment in 1992 after the federal census.
That being said, I may proceed to address your specific questions.
In response to your first question, regarding whether the state has "acquiesced" in accepting the current district boundaries, it is my opinion that any such acquiescence, even if proven, could not operate to legitimize the use of district lines that were not set by the Board of Apportionment. Your question raises the issue of "estoppel." It is held that "[e]stoppels against the public are little favored, and they generally cannot be asserted against, and are not applicable to, the government or governmental entities. . . . [T]hey may not be invoked where they would operate to defeat the effective operation of a policy adopted to protect the public." 31 C.J.S. Estoppel and Waiver, § 168. More specifically, it has been stated that "[m]ere acquiescence, laches, lapse of time, or nonaction on the part of the public or the public agents or officers does not ordinarily work an estoppel." 31 C.J.S.Estoppel and Waiver § 168 and 184. In Arkansas, an affirmative misrepresentation is required for estoppel to apply to the state.Arkansas Department of Human Services v. Estate of Lewis, 325 Ark. 20,922 S.W.2d 712 (1996). Finally, it has been held that: "Estoppel may not be applied against a governmental entity where such estoppel would require violation of the law. A public body may not be required through the doctrine of estoppel to embark upon or to continue a course of illegal action." 31 C.J.S. Estoppel and Waiver § 172.
In my opinion, therefore, any "acquiescence" on the part of the State cannot support the use of district lines which were not set in compliance with applicable constitutional provisions.
In response to your second question, concerning whether the current districts should be maintained in light of the candidates and voters reliance upon them, I can find no authority for such action. As your question posits, the districts currently used are not in compliance with law. Although in my opinion the votes previously cast in the wrong legislative districts would not in all likelihood be overturned by a court (see response to question 4, infra), I can find no legal authority supporting the proposition that votes should continue to be improperly cast, once the error is discovered.
As noted previously, Article 8 of the Arkansas Constitution requires the election of senators and representatives to be in accordance with the apportionment made by the Board. See Arkansas Constitution, at. 8, § 6.[2] Continued use of districts other than those set by the board is unlawful. I cannot opine, therefore, absent some controlling court order, that the current districts may be used in the upcoming general election or thereafter. Other considerations support this conclusion. First, the districts apportioned by the Board of Apportionment and detailed in its 1992 report have been found to be consistent with the federal "Voting Rights Act." 42 U.S.C. § 1973. See Jeffers v. Clinton
(Unreported Order 1994 H-C-89-004 E.D. Ark. 1994). The conformity of the current districts with this Act or with federal constitutional requirements has not been determined. Second, it is arguable whether the continued use of the wrong legislative districts would subject election officials to criminal liability. See, e.g., A.C.A. § 7-1-104(a)(11) (making it a felony for any election official to "knowingly permit any person to vote other than his or her legal ballot in any election"). (Emphasis added). For the reasons above, I cannot opine that use of the current districts is authorized, absent some judicial intervention.
You third question, regarding an unopposed incumbent now found to reside outside the district he represents, has, according to my understanding, become moot. It is therefore unnecessary to address this question.
You note in your fourth question that four preferential primary election and three general elections have been held using the current boundaries, and that candidates were nominated at the 1998 primary using the current district lines. Your question is how this will affect the general election of 1998.
In my opinion, a court will not set aside votes previously cast in election districts, the lines of which were for many years recognized by the election judges. This was one of the holdings of Lovewell v. Bowen,75 Ark. 452, 88 S.W. 570 (1905). "While the township lines were proved by the oral testimony, yet it was shown that for many years the lines recognized by the election judges in this instance had been universally acted upon as the true lines of the township. Under such circumstances the voters should not be disfranchised on account of universal ignorance of the true technical lines." Id. at 457. Cf. also Goodall v. Adams,277 Ark. 261, 640 S.W.2d 803 (1982) (lack of formal order creating new precinct does not invalidate the precinct, where boundaries were not questioned by anyone and it existed in fact through three elections).See also however Wilson v. Luck, 203 Ark. 377, 385, 156 S.W.2d 795 (1941) (stating that "[Lovewell] does not hold that one may vote in a precinct other than the one in which he resides where no misapprehension as to boundaries exists").
In my opinion, therefore, although votes previously cast, including those cast in the primary election, will not be overturned by a court, I can find no authority for holding the general election pursuant to the incorrect lines, once the error is discovered, merely because the primary election was held incorrectly.
Deputy Attorney General Elana C. Wills prepared the foregoing opinion, which I hereby approve.
Sincerely,
WINSTON BRYANT Attorney General
WB:ECW/cyh
[1] The provisions of Article 8 have been modified and shaped to some extent by a number of state and federal judicial decisions. These cases are too numerous and varied to outline in detail herein. Reference to them, however, is necessary for a full understanding of reapportionment requirements.
[2] Again, state and federal judicial decisions modify the provisions of Article 8.